Commonwealth v. Hyman, Appellant.

Argued March 11, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-

586

FELD, PARKER, JAMES and RHODES, JJ.

*Peter P. Zion,* with him *Robert W. Beatty* and *Albert H. Friedman,* for appellant.

*William R. Toal,* Assistant District Attorney, and with him *William J. MacCarter, Jr.,* District Attorney, for appellee.

OPINION BY STADTFELD, J., April 22, 1935:

This is an appeal from a conviction under the Act of May 1, 1929, P. L. 905, Section 1025, as amended by the Act of June 22, 1931, P. L. 751 (75 PS 634) known as "The Vehicle Code," for failure to render assistance, and sentence thereunder by the Court of Quarter Sessions of the Peace of Delaware County.

Defendant was tried under two bills of indictment, before BROOMALL, J., and a jury, one charging voluntary and involuntary manslaughter; the other charging failure to stop and render assistance as required under "The Vehicle Code."

From the testimony, we gather the following facts: About midnight of November 11, 1933, the body of one Daniel Bradley was found lying across the trolley tracks of the Philadelphia and West Chester Traction Company, at a point near Broomall in Delaware

County. The tracks at this point run parallel with West Chester Pike, a road running between Philadelphia and West Chester. There are no sidewalks at the scene of the accident. The body was lying face downwards, head on the ties about in the middle of the tracks; legs extending out from the tracks toward the gravel. No part of his body was in the roadway of the West Chester Pike. A short distance from the body on the berm of the road were found two small pieces of bone, which were later identified to have been parts of his skull, and a broken handle of an automobile door. There were some blood marks on the berm of the road. Bradley was killed instantly. A trolley car had passed this point going west at approximately 11:52 P. M. o'clock. Witnesses who discovered the body saw a trolley car going west towards West Chester about one-half to three-quarters of a mile beyond where the body was lying. At the point where the body was found there were no lights and it was very dark. The roadway at this point is eighteen feet wide.

William Hyman, the defendant, on the night of November 11, 1933, had called at an inn known as "The Dells" for the purpose of collecting moneys due him. "The Dells" is located on the West Chester Pike southwest of Broomall about two miles west from where the body of Bradley was found. Shortly after he had left "The Dells", while driving east on the West Chester Pike, a trolley car going west passed to his right and at the same time an automobile going in the same direction passed to his left. At that time, he had been driving his automobile at a rate of speed between thirty and thirty-five miles per hour. Being somewhat blinded by the combined headlights of the trolley car and automobile, at this point, he reduced his speed. Almost immediately after the trolley car and automobile passed him, he felt a brushing on the

right side of his automobile. As an automobile had been following him closely, he slowed down to permit it to pass, drove to the right of the road, and finally came to a stop between fifty to seventy-five feet from the point where he thought he had felt this brushing. In the meantime, the automobile that had been following him passed. He stepped out of his car, and walked back on the road to a point where he thought he had felt the brushing sensation. It was dark. He looked about, examined the road but saw nothing and returned to his car and drove back to the city of Philadelphia where he left his car in a garage. When he arrived at the garage, he noticed that the handle of the front right-hand door of the automobile was missing. He called the attention of an attendant at the garage to this fact. He then went home. These events took place on Saturday evening. The following Monday morning he read in the newspaper of the finding of Bradley's body at this point and that the handle of an automobile door had been found in the roadway near the body. He immediately called upon his attorney and told him the facts of what had happened to him on the previous Saturday night, and thereafter, with his attorney, went to the office of the district attorney in Philadelphia County and related his story. He then surrendered himself to the police authorities of Delaware County and voluntarily gave them a statement in writing setting forth substantially these facts.

At the trial, no witnesses were produced who saw the defendant's automobile strike Daniel Bradley. The testimony showed that Bradley, prior to the accident, had been drinking and that he was seen by witnesses staggering from side to side across West Chester Pike. Bradley was twenty years of age; five feet ten inches tall and weighed approximately one hundred and eighty pounds. His death was caused by a com-

pound fracture of the skull. His injuries, as described by the coroner's physician, were practically all about the head, which was, apparently, the point of contact.

There was no testimony offered to show that the automobile door handle found on the road fitted the defendant's automobile or had come from that automobile. The only testimony on the point was a statement by Hyman, when it was exhibited to him, that it did not look like the handle that had been on the door of his car. An examination of defendant's automobile disclosed some dents on all its fenders, the stanchion of the left front headlight broken at the base and that the handle of the right front door was missing. One witness claimed that there was a particle of blood on the right rear window of the car and a strand of hair on the upper hinge of the front door on the right side. No glass of either headlight was found broken. The Commonwealth did not produce any testimony to show whether or not these markings on the fenders and broken stanchion were new or old. Evidence was produced by the defendant that there had been dents in the fenders of his automobile and the stanchion had been broken prior to November 11, 1933.

At the conclusion of the Commonwealth's testimony, the count of the indictment charging voluntary manslaughter was withdrawn. The jury acquitted defendant on the charge of involuntary manslaughter. On the second indictment for failure to stop, and render assistance, containing five counts, the jury rendered a general verdict of guilty as to all counts. The first, second, third and fourth counts relate to failure to stop, while the fifth count relates to failure to render assistance.

Motions in arrest of judgment and for a new trial were filed.

In support of the motion for a new trial affidavits of after-discovered evidence were filed.

The court below heard the testimony of two witnesses whose affidavits were so taken. They testified in effect as follows: About midnight of November 11, 1933, they had been driving an automobile on the West Chester Pike between Newtown Square and Philadelphia towards Philadelphia. As they approached, an automobile was parked on the right-hand side of the road and they saw a man standing behind the parked automobile looking about. As they passed the car, the driver, one Rose, recognized William Hyman and said to his companion, one Cotts, "that is Bill Hyman. Wonder what he is doing out here."

The court below, after hearing this after-discovered testimony, set aside the finding of guilt by the jury of failure to stop, as was set forth in four counts. We do not approve of this practice. It sustained the finding of guilt on the failure to render assistance, and refused to grant a new trial. Defendant was sentenced to pay all costs, pay a fine of $200, and undergo imprisonment in the Delaware County Prison at separate and solitary confinement for a period of three years maximum and three months minimum. From the judgment and sentence pronounced this appeal was taken.

The assignments of error relate to the refusal to grant defendant's motion for withdrawal of a juror, its refusal to affirm defendant's points for binding instructions, errors in the charge and upon after-discovered evidence, and refusal to arrest judgment.

"The Vehicle Code" as amended by the Act of 1931, supra, provides, inter alia, as follows: "Section 1025. Duty to Stop in Event of Accident.—(a) The driver of any vehicle involved in an accident, resulting in injury or death to any person or damage to property, shall immediately stop such vehicle at the scene of

such accident. (b) The driver and owner, if present, of any vehicle involved in any accident, resulting in injury or death to any person, or damage to property, shall, upon request, give his name, address, and the registration number of his vehicle, and exhibit his operator's license to the person struck, or the driver or occupants of any vehicle involved and shall render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment, if it is apparent that such treatment is necessary, or is requested by the injured person."

Under sub-section "b", it must be shown that the driver of the vehicle was involved in an accident which resulted in injury or death to some person or damage to property; that he had been requested to give his name, address and registration number of his vehicle and exhibit his operator's license to the person struck etc., which he refused, and, or, that he failed to render reasonable assistance where assistance was necessary. Knowledge must be shown on the part of the owner and driver of a vehicle that he has injured some person or damaged the property of another user of the highway. This may be done by direct proof or by proof of circumstances from which knowledge may be reasonably inferred. Each element of this crime must be proved beyond a reasonable doubt.

There was no evidence that defendant knew that the automobile he operated had struck a person or damaged any property. There was no evidence that, having stopped, he saw anyone who needed assistance. The body of Bradley was entirely off the highway. He was dead and could make no outcry. It was extremely dark and he could not be seen. The investigating officers had to use search lights at that point. The witnesses who discovered the body of Bradley had to

have an automobile turn so as to have the headlights on that point so that they might see how to lift it.

The record is barren of any circumstances that show any knowledge by the defendant that he had struck or injured anyone or that assistance was necessary. Such knowledge is necessary before there can be any conviction: Com. v. Groff, 7 D. & C. 304; Com. v. Zeitler, 79 Pa. Superior Ct. 81.

The only part of his car that could have struck the decedent would have been the handle of the door. The point of contact was decedent's head. In order to be struck behind the head, from which were gouged two pieces of bone, and which could have been done by a handle of an automobile door, it would require that the decedent be bending at quite an angle towards the roadway. Such a contact could very well be made without sufficient jar or bump to cause the defendant to know he had struck Bradley. Such a point of contact would be to the right of the driver and to his rear. Decedent would necessarily have had to come from the right-hand side of the road in order to be struck in that manner and at no time would he have been in the line of the defendant's vision. Particularly is this so since, immediately prior to the time when defendant felt this brushing sensation, he had been blinded by the glaring headlights of the approaching trolley car and automobile, one coming from his right and the other from his left.

The trial judge in the opinion filed states, "Further, he (defendant) knew or should have known from the broken door handle and the dents in his car that he had struck a large object the size of decedent." It appeared from the evidence that defendant did not know of the missing door handle until he reached his garage many miles away from the scene of the alleged accident. There is no evidence that defendant was aware of the fact that the handle of the automobile

door was missing from his car when he stopped in the vicinity of where he thought he had brushed against some object.

The testimony was not such as to exclude every other reasonable presumption but that of guilt. It is ".......  the right and duty of the trial judge, after the evidence of the Commonwealth has been fully produced, to determine as matter of law, whether the proof has been sufficient in volume and quality to overcome the presumption of innocence, and thus put the accused to a defense": Com. v. Byers, 45 Pa. Superior Ct. 37, 39.

The court, in its charge to the jury, stated: "Was the speed he admits he was going, thirty-five miles, a proper speed under the circumstances or was he going at a greater rate of speed than he admits he was going? I think he said thirty or thirty-five miles an hour. .......Is that a proper rate of speed or was he going at a greater rate of speed as alleged by the Commonwealth, in view of the distance the Commonwealth alleges the body of the deceased was thrown? They are all questions for you, members of the jury, to determine under the evidence in the case. Did the defendant operate his car in a careless, negligent or reckless manner, without due regard to the circumstances present on that occasion when deceased was struck and killed there on the West Chester Pike?"

In relation to the charge of failure to render assistance, the question of the speed of the car, or the manner in which it was operated, or the distance the body of the decedent was alleged to be thrown, were immaterial. Assuming all of these matters against the defendant, they could have no bearing on the alleged charge of failing to render assistance.

We do not think the evidence measured in volume or quality to the extent necessary to sustain a convic-

tion. The request for binding instructions should have been affirmed.

The seventh assignment of error is sustained, the judgment is arrested and the defendant discharged.