COMMONWEALTH of Pennsylvania,
Appellee

v.

Luann WOOSNAM, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 13, 2003.
Filed March 12, 2003.

Alfred J. Merlie, Jenkintown, for appellant.

Robert A. Mancini, Assistant District Attorney, Doylestown, for Com., appellee.

Before: KLEIN and BOWES, JJ. and McEWEN, P.J.E.

BOWES, J.

¶ 1 At issue in this case is whether the trial court erred when it refused to instruct the jury that Appellant, Luann Woosnam, was guilty of leaving the scene of an accident involving death or personal injury of a person, 75 Pa.C.S. § 3742, if she knew or should have known that she was involved in an accident involving death or injury. We conclude that a *mens rea* element is a necessary component of a violation of this statute and the trial court's failure to instruct the jury as to this element pursuant to 18 Pa.C.S. § 302(b)(4) requires the grant of a new trial. We reverse and remand.

¶ 2 At Appellant's jury trial, eyewitness James Nowery testified as follows. At approximately 1:45 a.m. on March 30, 2001, Mr. Nowery and the victim, John Zilley, Mr. Nowery's brother in law, left the Dublin Inn in Dublin, Pennsylvania, where they had been drinking for approximately two hours. It was raining heavily, and the two men walked toward Mr. Nowery's apartment. They began to walk down Middle Road with Mr. Zilley walking behind Mr. Nowery when Mr. Nowery heard a "big snapping sound." N.T. Trial, 2/5/02, at 23. Mr. Nowery turned around and saw Mr. Zilley laying face down on the road with his arms outstretched and with clothing torn from his body, and observed "a car going by." *Id.* He was not able to view the car clearly because he was in shock, but he did notice that it was a dark foreign car such as a Subaru or Toyota. The vehicle, which was traveling very fast, did not stop.

¶ 3 Mr. Nowery admitted on cross-examination that he and the victim had been drinking since 3:00 p.m. that afternoon. He also stated that at the time of the incident, it was pitch black, windy, and raining very heavily. Finally, he indicated that they were walking on the road and

that the car that struck his brother-in-law was in the proper lane of traffic.

¶ 4 Dublin Borough Police Officer Brian Lehman was the Commonwealth's next witness and one of the officers who responded to the radio broadcast about the accident. He confirmed that at the time of the accident, "it was cold, raining heavily, [and] windy" and that it was "dark" because Middle Road does not have streetlights in the area. *Id.* at 45–46. Officer Lehman observed the decedent in the middle of the road, his shoes and his coat lying on different parts of the road, and pieces of black plastic, which Officer Lehman recovered, scattered over the road. When Officer Lehman aided in the execution of a search warrant on Appellant's car, a white Subaru Outback station wagon, in a mechanic's shop on April 5, 2001, he discovered similar pieces of black plastic from around the driver's-side headlight. Officer Lehman stated that the driver's-side windshield of the car was broken, the hood was damaged, and the driver's-side windshield wiper was bent. Officer Lehman transported all of the pieces of black plastic, together with glass fragments recovered from the driver's seat, the windshield wiper, the damaged hood, and the windshield, to the state police laboratory in Bethlehem. In a backpack located in the back of the car, he discovered what he suspected was marijuana, a pipe, and papers containing Appellant's name. These items were transported to the Bucks County Crime Laboratory for analysis. Another Commonwealth witness established that the substance in the backpack was marijuana.

¶ 5 Bucks County Detective Martin McDonough testified as follows. He executed a search warrant at Appellant's residence on the afternoon of March 30, 2001. He took photographs of Appellant's car, and these photographs were introduced into evidence. They show that the driver's-side windshield was damaged and the wind-

shield wiper was bent. Detective McDonough testified that he observed broken glass inside the car on the driver's seat and the back seat.

¶ 6 Dublin Borough Police Chief Thomas Supplee testified as follows. He accompanied Detective McDonough when the search warrant was executed. When he arrived at Appellant's residence, he noticed the damaged Subaru parked in the driveway. Appellant exited her house and asked the police why they were there. Chief Supplee responded that they were investigating an accident involving her vehicle. Appellant, who seemed distraught, said, "[W]hat did I do?" and then hesitated momentarily before asking the question again. N.T. Trial, 2/6/02, at 31.

¶ 7 Chief Supplee was cross-examined with his police report. That report indicates that Appellant initially was not distraught when she saw police and that she did not ask what she did. Instead, Chief Supplee's report indicates that Appellant "asked why [police] were there, and [Chief Supplee] advised [Appellant] that we believed her vehicle was involved in an accident, at which point she stated what did I hit. [Appellant] appeared distraught and again asked what did I hit. [Chief Supplee] advised her that she had hit a person and he had died, and [Appellant] appeared even more upset and began to cry." *Id.* at 37.

¶ 8 Appellant was with Scott Famielietti in the hours before the accident, and he testified as follows. Mr. Famielietti and Appellant were together all evening and until about 1:00 a.m., when she left for home. At that time, Appellant's car was not damaged. Appellant consumed approximately two rum and cokes that evening. When Mr. Famielietti awoke the next morning, Appellant called him. She started to speak on his answering machine, saying that she had an accident and that

"she didn't know what hit her." *Id.* at 76. Mr. Famielietti picked up the telephone, and Appellant also told him that police were at her home and that "she was driving on the road, she looked down and heard a crash and she had glass all over her." *Id.*

¶ 9 The Commonwealth also presented the testimony of a forensic scientist, Clyde Lideick, who analyzed the evidence taken from the crime scene and Appellant's car. He concluded that some of the pieces of black plastic from the crime scene were from the area around Appellant's driver's-side headlight and that other, smaller pieces were from her windshield wiper. Fibers matching the decedent's jacket were recovered from the broken windshield in Appellant's car.

¶ 10 The Commonwealth qualified Hilltown Township Police Sergeant Randall Tanghe as an expert in accident reconstruction. Based on his review of the accident scene, which he examined on the night of the accident, as well as his examination of the damage to Appellant's car, he concluded that the following occurred. The victim initially was struck with the front bumper of Appellant's car, his body then rotated backward up onto the hood, his head struck the windshield, and he rolled off the car from the front of the driver's side. Sergeant Tanghe indicated that Appellant was traveling at forty to forty-two miles per hour.

¶ 11 On cross-examination, Sergeant Tanghe acknowledged that the decedent was wearing all dark clothing, including dark trousers, a long dark long-sleeved shirt, and a dark-colored, hooded jacket. The expert witness conceded both that the ability to see Mr. Zilley, given the conditions on the night in question, would have been "very, very poor," and that the time it would have taken the victim to strike and roll from the car would have been "very quick." N.T. 2/9/02, at 106, 115.

Sergeant Tanghe stated that the car's path of travel was not interrupted by striking Mr. Zilley and that the victim did not land under the car. In addition, the victim's blood alcohol content was .26%.

¶ 12 Appellant testified on her own behalf. She has an eight-year-old child and a five-year-old child and is self-employed as a house cleaner. She and her husband were separated on the night in question but continued to reside in the same residence. She was out that evening because under their custody arrangement, each party was to spend alternating evenings alone with the children. She testified as follows regarding the accident:

Q. Did you see anybody on Middle Road at all?

A. No.

Q. Did you see anything on Middle Road at all on the roadway?

A. No.

Q. What happened as you were driving on Middle Road?

A. My window crashed.

Q. What did you think happened when the window crashed?

A. Something hit me.

Q. Where did you think it had come from?

A. Above.

Q. What did you think it was?

A. A limb.

Q. A limb from what?

A. One of the trees that are right around there.

Q. What did you do when the windshield shattered?

A. I moved my head out of the way.

Q. Could you describe for us what happened when the windshield shattered?

A. Glass flew in at me.

Q. Did you think you had hit anything?

A. No.

Q. What did you think had happened?

A. I thought something hit me.

Q. Did you feel any change in the direction of your car when the windshield was struck?

A. No.

Q. Did you feel yourself going over anything?

A. No.

. . . .

Q. Did the flight of the car change at all as the thing impacted your windshield?

A. No.

Q. Did you see anything at all after the impact on the roadway?

A. No.

Q. Did you look?

A. It was dark, it was raining.

Q. You couldn't see anything at all?

A. You couldn't see anything, no.

Q. Did you have any reason to believe there was somebody walking down the middle of the road?

A. No.

Q. How often do you drive Middle Road?

A. At least twice a day every day.

Q. Have you ever had the experience of someone walking down the middle of the road on Middle Road?

A. No.

Q. Have you ever seen people walking on Middle Road?

A. Not on the road. On the sidewalks.

N.T. Trial, 2/7/02, at 16–18. Appellant also testified that when she returned home, she left her car in plain view in the driveway outside her home. She further stated that she "definitely would have stopped" had she known that she struck someone and that she "had a phone" with her. She stated she "could have called right away." *Id.* at 21. She was shocked when she discovered that she struck someone that night.

¶ 13 Following the close of the evidence, the trial court instructed the jury as follows regarding the elements of 75 Pa.C.S. § 3742, accidents involving death or personal injury:

I'm going to review the crimes charged with you. First, the crime of accidents involving death or personal injury, which is commonly referred to, as you have heard, as the crime of hit-and-run. The defendant here, Luann Woosnam, is charged with accidents involving death or personal injury. Under the law of Pennsylvania a person is guilty of this crime if, while driving a vehicle, he or she is involved in an accident resulting in the death of any person and the driver does not fulfill two duties. First, the duty to stop; and second, the duty to give information and render aid.

*Id.* at 43. The trial court continued by defining the duties to stop, give information, and render aid.

¶ 14 Following the close of jury instructions, Appellant objected to the trial court's failure to instruct the jury that the Commonwealth had to prove beyond a reasonable doubt that Appellant knew or should have known that she had been involved in an accident involving death or injury. N.T. Trial, 2/7/02, at 73. That objection was overruled, and the court refused to charge the jury in accordance with Appellant's request.

¶ 15 Based on the above evidence, Appellant was convicted of possession of marijuana and leaving the scene of an accident involving death or injury. She was sentenced to eighteen to thirty-six months imprisonment, fines, and costs. The court

refused to grant her work release. This appeal followed.

¶ 16 On April 18, 2002, Appellant was ordered to file a concise statement of matters to be raised on appeal. Appellant filed that statement on April 26, 2002, and it reads as follows:

1. The Court erred in failing to suppress evidence seized as a result of a search warrant issued on March 30, 2001. The warrant was issued without probable cause.

2. The Court erred in failing to instruct the jury that in order to convict Defendant on the charge of leaving the scene of an accident involving death or personal injury, the Commonwealth was required to prove beyond a reasonable doubt that Defendant knew or should have known that she had hit and injured an individual and failed to stop.

3. Defendant reserves the right to amend this statement after a review of the trial transcript.

Concise Statement of Matters Complained of, 4/26/02, at 1. On August 19, 2002, the trial court issued its opinion addressing the two contentions raised in this statement, and the record was transmitted to this Court. On September 18, 2002, Appellant filed a document entitled "Addendum to Concise Statement of Matters [Complained] of." In that document, Appellant raised the contention that the evidence was not sufficient to sustain her convictions.

¶ 17 On appeal, Appellant raises the following issues:

A. The trial court erred in failing to instruct the jury that the Commonwealth must prove that Ms. Woosnam knew or should have known that she had been involved in an accident requiring her to stop in order to convict her of leaving the scene of an accident.

B. The Commonwealth failed to prove beyond a reasonable doubt that Ms. Woosnam violated 75 PA.C.S.A. Section 3742.

C. The trial court erred in finding that probable cause existed for the search of Ms. Woosnam's 2000 Subaru Outback.

Appellant's brief at 1.[1]

¶ 18 The first issue that we address is whether Appellant's allegation concerning the sufficiency of the evidence was waived, as the Commonwealth contends, by her failure to include it in her timely filed Pa.R.A.P.1925(b) statement. We conclude that under the relevant case law, it is.

¶ 19 In *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998), our Supreme Court indicated that from the date of that decision forward, an issue that is not included in a Pa.R.A.P.1925(b) statement will be waived for purposes of appeal. In *Commonwealth v. Butler*, 571 Pa. 441, 812 A.2d 631 (2002), the Court further expanded on the *Lord* holding, stating that the holding was firm and that wavier automatically applies when a statement is not filed or if an issue is not included in the statement, even when the question of waiver has not been raised by the other party and even when the trial court has chosen to overlook the failure by addressing the issues it assumed would be raised. The Court in *Butler* indicated that the purpose of Pa.R.A.P.1925(b) is two-fold, ensuring both that the trial court does not have to speculate as to which issues present in the case will be raised on appeal and that the appellate courts have an adequate trial

1. This page of Appellant's brief is not numbered; however, it is the first page after the title page.

court opinion in order to conduct effective appellate review.

¶ 20 In the present case, Appellant's Pa. R.A.P.1925(b) statement raises two issues that were addressed by the trial court. The addendum was filed without the trial court's leave and after the trial court issued its opinion and the record was transmitted to this Court. We therefore conclude that the issue is waived for purposes of appeal. *Commonwealth v. Overby*, 744 A.2d 797 (Pa.Super.2000) (untimely Pa. R.A.P.1925(b) statement filed after the trial court filed its opinion and record was transmitted to Superior Court failed to preserve any issues for review).

¶ 21 Next, we determine if the trial court erred in refusing to charge the jury, as an element of the crime of leaving the scene of an accident involving injury or death, that the Commonwealth must prove beyond a reasonable doubt that Appellant knew or should have known that she had been involved in an accident. We start by examining the statutory language.

§ 3742. **Accidents involving death or personal injury**

  (a) General Rule.—The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S. § 3742. This crime is graded as a third degree felony if the victim of the accident dies.

¶ 22 The statute itself does not contain a *scienter* requirement. In most jurisdic-

tions, motorists involved in an accident involving either property damage or personal injuries are required by statute to stop, and in the event of injury, to render aid. Marjorie A. Caner, Annotation, *Necessity And Sufficiency Of Showing, In Criminal Prosecution Under "Hit–And–Run" Statute, Accused's Knowledge Of Accident, Injury, Or Damage*, 26 A.L.R.5th 1 (2002) at 2(a). These statutes commonly are referred to as hit-and-run statutes, and most of them require that the motorist have knowledge of the occurrence of the collision, injury, or damage as a prerequisite to a conviction under the statute. *Id.* In those jurisdictions where a *mens rea* requirement is contained in the statute, the statutory element of knowledge is considered satisfied if there is circumstantial evidence that indicates the motorist had knowledge of the accident. *Id.*

¶ 23 However, in many jurisdictions, the statute "defining the offense of hit-and-run does not contain the express requirement of knowledge by the motorist of the accident, injury, or damage." *Id.* In these jurisdictions, there are three approaches:

[S]ome courts have taken the view that proof of the defendant's knowledge of the occurrence of the collision only was required, and it need not also be shown that the defendant knew of any resulting injury or damage (§ 3a). However, a number of courts have held that, where the statute did not specifically require proof of the defendant's knowledge of the collision or of the resulting injury or damage, that proof of the defendant's knowledge of both the collision and the resultant injury or damage was required (§ 3b).

In a few jurisdictions, courts have held or recognized that, under hit-and-run statutes not including any express requirement of knowledge by the defendant of the collision, injury, or damage,

such proof was not required in a prosecution under the statute, essentially making the offense one of strict liability, although noting that a showing of a lack of knowledge may be a valid defense (§ 3c).

*Id.* To summarize, only a few jurisdictions refuse to read a mental culpability element into their hit-and-run statutes when those statutes do not expressly contain that element. Instead, the vast majority of the jurisdictions with those type of statutes require the prosecution to prove some element of knowledge on the motorist's part of the accident, and injury or damage.

¶ 24 In Pennsylvania, we already have had occasion to review another hit-and-run statute, 75 Pa.C.S. § 3743, accidents involving damage to attended vehicle or property, which provides:

> (a) General rule.—The driver of any vehicle involved in an accident resulting only in damage to a vehicle or other property which is driven or attended by any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

¶ 25 In *Commonwealth v. Kauffman*, 323 Pa.Super. 363, 470 A.2d 634 (1983), the defendant was found guilty of violating 75 Pa.C.S. § 3743. He claimed at trial that he was not aware that he struck a car and did not violate the statute. On appeal, he contended that the trial court applied an erroneous standard of law to find him guilty. The trial court had ruled that the evidence was sufficient to prove the offense because it demonstrated that the defendant negligently was unaware of having been involved in the accident. The defendant claimed that the statute required that the motorist actually be aware that he was involved in an accident.

¶ 26 In *Kauffman*, we noted that 75 Pa.C.S. § 3743 contains no element regarding a particular mental state and then examined the case law of jurisdictions interpreting similar hit-and-run statutes, observing that many of them also are silent as to mental culpability. Our review in *Kauffman* established that, in those jurisdictions, different approaches were utilized when a statute is silent as to a mental culpability requirement: one approach demanded actual knowledge of both collision and injury, another approach required that the evidence indicate that a reasonable man under the circumstances either knew or should have known that he was involved in an accident, and a third approach imposed strict liability.

¶ 27 In *Kauffman*, we adopted the second approach for purposes of 75 Pa.C.S. § 3743, concluding that the Commonwealth had to prove beyond a reasonable doubt the following *scienter* element as a prerequisite to a conviction under accidents involving damage: that the circumstances of the accident indicate that the defendant reasonably should have known that he or she was involved in an accident involving damage, as defined in 18 Pa.C.S. § 302(b)(4):

> (4) A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of

care that a reasonable person would observe in the actor's situation.

¶ 28 In *Kauffman,* we affirmed the trial court's conclusion that the evidence was sufficient to establish that the driver knew or should have known that he was involved in an accident involving damage to a car. *See also Commonwealth v. Karl,* 340 Pa.Super. 493, 490 A.2d 887 (1985) (same).

■ ¶ 29 We conclude that, in the present case, the same *scienter* element is to be applied in order to obtain a conviction under accidents involving injury or death. This holding finds support in our ruling in *Kauffman,* which interprets a statute that is identical to the one at issue, except with respect to the consequences of the accident. Our ruling also is buttressed by the interpretation of identical statutes in the majority of jurisdictions. Finally, our conclusion that 75 Pa.C.S. § 3742 has a *mens rea* element becomes virtually compelled when we examine the precedent that interprets the statute from which 75 Pa.C.S. § 3742 is derived.

¶ 30 Section 1025(b) of the Act of May 1, 1929, P.L. 905, as amended by section 3 of the Act of June 29, 1937, P.L. 2329, 75 P.S. § 634(b)(repealed) provided:

> The driver and owner, if present, of any vehicle involved in any accident, resulting in injury or death to any person or damage to property, shall give his name, address, and the registration number of his vehicle, and exhibit his operator's license to the person struck, or the driver or occupants of any vehicle involved, or the owner or custodian of any property involved, unless the person struck, or the driver of the vehicle or the custodian of the property involved, signifies that no injuries have been received or damages sustained, and shall render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment, if it is apparent that such treatment is necessary, or is requested by the injured person.

¶ 31 This early precursor to 75 Pa.C.S. § 3742 incorporates the elements of both that section and the section of Motor Vehicle Code interpreted in *Kauffman* because it requires a motorist to stop and perform certain duties if the motorist is involved in an accident involving injury or damage. Even though former 75 P.S. § 634 obviously contained no mental culpability element, in applying it, we held, "Knowledge that one has injured some person or damaged the property of another user of the highway is an essential element of the offense. This may be shown by direct proof or by proof of circumstances from which knowledge may reasonably be inferred... but a strong suspicion that he knew is not sufficient. There is no violation of section 1025(b) as amended, 75 PS § 634(b), unless it is shown beyond a reasonable doubt that defendant had knowledge of the accident." *Commonwealth v. Adams,* 146 Pa.Super. 601, 23 A.2d 59, 61 (1941) (citing *Commonwealth v. Hyman,* 117 Pa.Super. 585, 178 A. 510 (1935)); *accord Commonwealth v. Buckley,* 197 Pa.Super. 266, 177 A.2d 107 (1962) (interpreting section 1027 of The Vehicle Code of April 29, 1959, P.L. 58, 75 P.S. § 1027, which was identical to and successor statute to statute under consideration in *Adams* ).

¶ 32 Fundamental notions of justice and fair play are offended herein. Appellant was convicted of a third degree felony and was sentenced to eighteen to thirty-six months imprisonment, but a jury has not made a determination that she was negligent as defined by 18 Pa.C.S. § 302(b)(4) with respect to her knowledge that she was involved in an accident involving death or injury.

¶ 33 In the present case, the trial court made this third degree felony a strict lia-

bility crime. It informed the jury that Appellant was guilty if the Commonwealth proved beyond a reasonable doubt that she was involved in the accident and left the scene; it refused to instruct the jury that the Commonwealth had any burden of proving any amount of knowledge on Appellant's part that she was involved in an accident involving death or injury. This refusal was erroneous. Furthermore, the trial court removed from the jury's consideration the only defense presented by Appellant and virtually instructed the jury to find in favor of the Commonwealth.

¶ 34 Appellant testified that she thought she was struck by a tree branch, and she averted her head when the glass entered the car. There was a significant amount of circumstantial evidence to support the reasonableness of this belief. It was pitch black outside, so dark that Appellant's white car appeared to be dark in color. It was raining very hard and was windy. A tree branch easily could have been blown onto the car. The Commonwealth's own expert witness conceded that the victim would not have been visible on the night in question because his clothing was dark, there were no street lights in the area, and it was a windy and rainy night. The accident reconstructionist stated that the accident would have occurred very quickly, Appellant's car did not run over the victim's body, and that Appellant's car would not have changed directions as a result of the impact.

¶ 35 Furthermore, many of Appellant's actions were consistent with her belief that a tree branch struck her car. She did not attempt to hide the car, thus indicating a lack of guilty knowledge. Appellant told her friend that something struck her car when she was on her way home. When police arrived, she did not appear upset initially and asked them what she hit. She was shocked and disbelieving when told that she had struck a pedestrian.

¶ 36 In conclusion, we find that Appellant was entitled to an instruction pursuant to 18 Pa.C.S. § 302(b)(4) regarding her knowledge that she was involved in an accident involving death or injury and that the trial court's refusal to so instruct the jury requires the grant of a new trial.

¶ 37 Appellant also levels a challenge to the search conducted of her car. Specifically, she maintains that the affidavit of probable cause was insufficient because there was no evidence linking her car to the accident. Thus, we must address whether probable cause existed for issuance of the search warrant for the Subaru Outback and begin by examining the affidavit submitted to support the warrant. The affidavit first sets forth the facts and location of the hit-and-run accident involving Mr. Zilley. The report states that Mr. Nowery told police that the accident occurred so quickly that he could not provide a description of the vehicle but that it may have been a dark color. Then, the following facts are recited:

On March 30, 2001 at 1107 am Officer William Kirk, # 06, Dublin Boro Police Department, was contacted by Brett W. Woosnam, 1317 Broad Street, Perkasie, Pennsylvania. I met with Mr. Woosnam in the parking lot of the Milk House at Middle Road and Broad Street, in Hilltown Township. Mr. Woosnam stated that he was leaving for work this morning. He observed damage to his vehicle, a 2000 Subaru Outback white in color, Pennsylvania Registration # RC014E. He had heard of a hit and run accident in Dublin Boro. He advised that his wife had been operating the car last night. He stated that the car was at his residence, and that his wife, Luann Woosnam, DOB/5–31–70 was maybe leaving shortly.

Officer Kirk responded to 1317 Broad Street, Perkasie, Pennsylvania, the Woosnam, which is approximately 2

miles from the accident scene. Officer Kirk observed the vehicle that Mr. Woosnam described parked in the driveway of the residence. The car had a severely damaged windshield and damage to the drivers side front of the vehicle. The damage appeared to have recently occurred.

Officer Bohdan Gol, Dublin Boro Police Department, spoke to Luann Woosnam at her residence and at the Dublin Boro Police Department. Ms. Woosnam had an odor of alcohol about her and appeared to be under the influence of alcohol.

Chief Thomas Supplee, Dublin Boro Police Department, proceed to 1317 Broad Street, Perkasie, Pennsylvania and advised that he observed what appeared to be hair and fabric on the windshield of the above mentioned vehicle. He also observed a brown spot which appeared to be blood.

Through your affiants training and years of experience I am aware that when an accident occurs normally there is a transfer of evidence between the striking object and the object that is struck. Based on the above your affiant has probable cause to believe that the above vehicle was driven by Luann Woosnam on March 30, 2001 and struck and killed Mr. Zilley. There is probable cause to believe that Luann Woosnam was operating under the influence of alcohol at the time of the accident. Further there is probable cause to believe that Mr. Zilley's hair, fiber and blood, tissue and or fabric will be found on the above vehicle.

Affidavit of Probable Cause, 3/30/01, at 1.

■ ¶ 38 We now review the legal principles applied when a court reviews the sufficiency of an affidavit to determine whether it supports the magistrate's conclusion that it established probable cause for issuance of a search warrant:

Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The information offered to demonstrate probable cause must be viewed in a common sense, nontechnical, ungrudging and positive manner. It must also be remembered that probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and that deference is to be accorded a magistrate's finding of probable cause.

Hearsay information is sufficient to form the basis of a warrant so long as the magistrate has been provided with sufficient information to make a "neutral" and "detached" decision about whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for concluding that probable cause existed."

*Commonwealth v. Baker*, 532 Pa. 121, 615 A.2d 23, 25 (1992)(quoting *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985))(citing *Illinois v. Gates*, 462 U.S. 213, 236 [103 S.Ct. 2317, 76 L.Ed.2d 527] (1983)).

*Commonwealth v. Rivera*, 2003 PA Super 29, 18, 816 A.2d 282.

■ ¶ 39 In this case, the magistrate was given the following information. Appellant lived two miles from the accident scene. Her husband, a reliable source of information, indicated that Appellant had been driving the car on the night of the accident and when she returned, it was damaged. Police went and observed the car. Appellant's car had damage consistent with what would have been sustained had it struck a pedestrian, including dam-

age to the windshield and bumper as well as what appeared to be blood stains on the car and hair and clothing fiber in the broken windshield.

¶ 40 These facts indicate that the car probably was being driven at the time of the accident and in the location of the accident. Furthermore, there was evidence linking this car to the accident. It had been damaged recently and contained evidence of having struck a pedestrian, including hair, clothing fibers, and blood stains. Mr. Nowery, an eyewitness to the accident, told police that the car that struck the decedent did not stop. We conclude that these facts supported the probability that the vehicle was involved in the crime committed, which is leaving the scene of an accident involving death or injury, and that the magistrate had a substantial basis for concluding that probable cause existed.

¶ 41 Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.

¶ 42 Judge KLEIN Concurs in the Result.