J-A06004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GRANT ROBERT TANTLINGER | : | |
| | : | |
| Appellant | : | No. 710 WDA 2023 |

Appeal from the Judgment of Sentence Entered May 24, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0003615-2020

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: March 14, 2024**

Grant Robert Tantlinger appeals from the judgment of sentence, entered in the Court of Common Pleas of Westmoreland County, after the trial court convicted him, in a nonjury trial, of accidents involving death or personal injury[1] and duties at stop signs.[2]  We affirm.

The trial court set forth the factual history of this matter as follows:

On August 28, 2020[,] at approximately 11:00 a.m., Detective [Paul] Manke was dispatched to the intersection of Locust Street and Ridge Avenue in the City of New Kensington[] to investigate a motorcycle accident.  He observed a motorcycle lying on the roadway and a man lying in the grass.  [Detective] Manke obtained a surveillance video from an individual who lived across the street from the fallen motorcycle.  Introduced as Commonwealth's Exhibit One, the surveillance video, which included clips (identified as chapters) from several cameras

_____

[1] 75 Pa.C.S.A. § 3742(a).

[2] *Id.* at 3323(b).

mounted at different vantage points, displayed the impact between the [Tantlinger's] vehicle and the motorcycle.

Patrolman [Michael] Krahe responded separately from Detective Manke. He testified that he observed the victim lying on the ground in front of 501 Ridge Avenue and his disabled motorcycle in the roadway five to ten feet away. While the victim was being treated by medical personnel, [Detective] Manke and [Patrolman] Krahe looked for witnesses. Sometime thereafter, [Detective] Manke went to speak with the resident whose camera filmed the video, and Officers Krahe and Huth left the scene to drive around the area in search of the vehicle depicted in the video.

After an unsuccessful search, they spoke to [Detective] Manke, who had returned to the New Kensington Police station. He told them that the suspect, who was later identified as [Tantlinger], had arrived at the New Kensington Police station to inquire about the accident. When [Officers] Krahe and Huth arrived at the New Kensington station, they saw a vehicle matching the one they had viewed in the video, parked in the parking lot. [Patrolman] Krahe eventually interviewed [Tantlinger], who acknowledged living close to the accident scene and owning the vehicle identified in the video. After watching the video, [Tantlinger] agreed that he had struck the motorcycle but denied being aware of it at the time. [Patrolman] Krahe testified that [Tantlinger] acknowledged seeing the motorcycle before hearing a "thump" and feeling a "bump." However, during his testimony, [Tantlinger] denied having seen the motorcycle before the accident. [Tantlinger] testified that "[he] didn't know if [he] was involved in anything," but that after traveling through the intersection, "[he] did check" and "looked around his car." He then drove to Giant Eagle, where he spoke with a "relative," who encouraged him to turn himself in. After the interview, [Patrolman] Krahe examined [Tantlinger's] vehicle and observed paint scuff marks and scratches on the front bumper of the [] vehicle.

[The victim,] Dennis Allen[,] recalled that he was riding his motorcycle to his dentist appointment in downtown New Kensington before the accident happened; however, he does not recall anything about the accident itself. His next memory is [of] waking up at Allegheny General[ Hospital]'s emergency room. Allen identified his injuries from the accident as a broken ankle that required surgical insertion of eleven pins; blunt injury to his sternum; eight broken ribs; three broken vertebrae; a broken

collar bone; a broken pinky finger[;] bleeding on both sides of his brain; and an aortic aneurism.

[Allen] was in the Allegheny General Hospital for four days before being transferred, due to insurance issues, to Presbyterian Hospital, where he remained for two weeks. After his discharge from Presbyterian Hospital, Allen went to a nursing home. However, after only one day, he discharged himself to recuperate with a visiting nurse and physical therapist. Allen used a wheelchair and/or crutches for approximately two-and-one-half months and saw a nurse and physical therapist for approximately two months. Because of his brain injury, he still has problems with balance and memory loss. [Allen's] pinkie finger is "all stiff," and doesn't function the way it did before the accident. It was visibly deformed at the time of trial. [Allen] no longer plays golf or hikes. He has developed a wheeze and a cough from his chest injuries, and these interfere with his sleep.

[Tantlinger] testified that on the morning of August 28[, 2020,] he left his home on Ridge Avenue to run some errands. His first stop was at First National Bank on Locust Street. To get there, [Tantlinger] described entering a "funky" intersection where "the traffic is always flying." He said he looked left, looked right, and then looked left again before entering the intersection. Seeing no vehicle approaching, he entered the intersection. He heard someone yell his name several times and then felt a bump. After feeling the bump, [Tantlinger] checked all of his mirrors and looked out of his windows but saw nothing. He traveled up a hill and then pulled over to check his vehicle. Because he did not see anything, he continued on to Giant Eagle. His grandmother called him while he was at Giant Eagle to tell him not to worry if he heard about the accident that occurred outside of her house, apparently because she was not injured. His conversation with his grandmother made him concerned that he might have been involved in the accident she described.

When [Tantlinger] entered the police station, [he] told a woman sitting at the desk that he might have been involved in an accident. He spoke to officers and explained that he had felt a bump but did not believe that he had hit anything. He asked them to show him the video. After watching the video, [Tantlinger] admitted that the car that struck Allen was his car. However, he denied that he had seen a motorcycle before the accident or knew that he had hit a motorcycle and injured Allen when he drove away.

Trial Court Opinion, 8/1/23, at 2-5 (citations to record, footnote, and parenthetical numerals omitted).

A nonjury trial was held on July 25, 2022, after which the trial court ordered the parties to submit briefs on the issue of whether Allen's injuries satisfied the statutory requirement for "serious bodily injury." On October 6, 2022, the trial court found Tantlinger guilty of the above offenses and deferred sentencing. On January 31, 2023, the court sentenced Tantlinger to 90 days to two years, minus one day, of incarceration for accident involving death or injury, to be served on home monitoring. The court imposed no further penalty for duties at stop signs. Thereafter, on February 16, 2023, the court vacated its January 31, 2023 sentencing order because it determined that home monitoring was an illegal sentence. On April 11, 2023, the court resentenced Tantlinger to a sentence of the same duration, to be served at Westmoreland County Prison.

On May 3, 2023, having retained new counsel, Tantlinger filed a motion for leave to file a post-sentence motion, *nunc pro tunc*,[3] which the Commonwealth opposed. By order filed May 8, 2023, the trial court granted leave to file the motion, *nunc pro tunc*, and scheduled a hearing thereon.

---

[3] Tantlinger's motion for leave to file a post-sentence motion, *nunc pro tunc*, was filed and granted within 30 days of the imposition of his April 11, 2023 amended judgment of sentence and, as such, tolled the appeal period. **See Commonwealth v. Capaldi**, 112 A.3d 1242, 1244 (Pa. Super. 2015) (post-sentence motion, *nunc pro tunc*, may toll appeal period when: (1) defendant requests that trial court consider post-sentence motion *nunc pro tunc*; (2) trial court explicitly permits filing of motion, *nunc pro tunc*; and (3) both conditions are met within 30 days of sentencing).

Following that hearing, on May 24, 2023, the trial court issued an order granting, in part, and denying, in part, Tantlinger's post-sentence motion. Specifically, the court denied Tantlinger's request for a pre-sentence investigation, which he had previously waived. However, the court granted Tantlinger's request for a later report date and reduced Tantlinger's maximum sentence from 23 months to six months. *See* Trial Court Order, 5/24/23, at 3 (unpaginated).

On June 21, 2023, Tantlinger filed a notice of appeal to the April 11, 2023 judgment of sentence. However, because the court subsequently amended his sentence on May 24, 2023, Tantlinger filed an amended notice of appeal to that judgment of sentence on June 22, 2023. Both Tantlinger and the trial court have complied with Pa.R.A.P. 1925. Tantlinger raises the following issue for our review:

> Whether the evidence was insufficient as a matter of law where [Tantlinger] testified that[,] when the large vehicle he was driving struck a motorcycle, he did not realize that he had hit anything, prior to leaving the scene, and the trial court chose to merely disbelieve his testimony?

Brief of Appellant, at 4.

Our standard of review of challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In

- 5 -

addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. . . . Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Jones*, 271 A.3d 452, 457–58 (Pa. Super. 2021), quoting *Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017).

Tantlinger challenges the sufficiency of the evidence supporting his conviction for accidents involving death or personal injury. *See* 75 Pa.C.S.A. § 3742. The statute provides as follows:

(a) General rule.--The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

*Id.* at § 3742(a).

Section 3744 of the Vehicle Code requires as follows:

(a) General rule.--The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give his name, address[,] and the registration number of the vehicle he is driving, and shall upon request exhibit his driver's license and information relating to financial responsibility to any person injured in the accident or to the driver or occupant of or person attending any vehicle or other property damaged in the accident and shall give the information and upon request exhibit the license and information relating to financial

- 6 -

responsibility to any police officer at the scene of the accident or who is investigating the accident and shall render to any person injured in the accident reasonable assistance, including the making of arrangements for the carrying of the injured person to a physician, surgeon[,] or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if requested by the injured person.

*Id.* § at 3744(a).

The Vehicle Code defines "serious bodily injury" as "[a]ny bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Id.* at § 102.

Here, Tantlinger argues that the Commonwealth failed to demonstrate that he possessed the requisite *mens rea* to support his conviction. While acknowledging decisions of this Court which have held that the scienter element for section 3742 is "known or should have known," he nonetheless submits that "the Commonwealth must prove more than [that] a person 'should have known' they were in an accident to support a conviction" under section 3742. Brief of Appellant, at 20.

Tantlinger further argues that "[h]e presented plausible testimony [that he did not know he had hit the victim] and the trial court merely disbelieved him." *Id.* at 25. Because the Commonwealth cannot sustain its burden of proof solely on the factfinder's disbelief of the defendant's testimony, the evidence was insufficient to support his conviction. ***See id.*** at 23, citing

*Commonwealth v. Graham*, 596 A.2d 1117, 1118 (Pa. 1991). He is entitled to no relief.

While section 3742 itself does not contain a scienter requirement, binding precedent of this Court has established that, to support a conviction under section 3742, the Commonwealth must establish that the "driver knew or should have known" that he was involved in an accident involving personal injury or death. *Commonwealth v. Woosman*, 819 A.2d 1198, 1206 (Pa. Super. 2003). *See also Commonwealth v. Kinney*, 863 A.2d 581 (Pa. Super. 2004).

The trial court addressed Tantlinger's claim as follows:

> In this case, the evidence, particularly the video, clearly establishes that [Tantlinger] either knew he had struck the victim or should have known that he had been involved in an accident. The damage to [Tantlinger's] vehicle and surveillance footage establishes that the impact occurred to the front of [Tantlinger's] vehicle. Surely, as the accident occurred in his line of sight, the motorcycle would have been visible to [Tantlinger] if not before, then at the point of impact. According to Officer Krahe, [Tantlinger] admitted to seeing a motorcycle prior to the accident. Even if [Tantlinger] did not see the impact, hearing a thump and feeling a bump, after seeing a motorcycle, creates some awareness on [Tantlinger's] part [] that he was involved in an accident.

> [Tantlinger's] actions after the accident also lend credence to the Commonwealth's assertion that he knew that he had been in an accident. After traveling up a hill, he pulled over to check his vehicle. If he did not think that he had been involved in an accident, there would have been no need for this. Most damning were [Tantlinger's] actions in turning himself in after reaching Giant Eagle. These are the actions of a person with a guilty conscience, and [Tantlinger's] explanations to the contrary were not credible.

Trial Court Opinion, 8/1/23, at 10-11.

Upon our review of the record, we agree with the trial court that the Commonwealth presented sufficient evidence to prove that Tantlinger knew or should have known that he was involved in an accident. **Woosman**, **supra**. In particular, the video evidence clearly demonstrated that the accident occurred in Tantlinger's direct line of sight when he impacted Allen's motorcycle with the front of his vehicle in broad daylight. **See** Commonwealth's Exhibit 1, Chapter 5, at 10:16:24; Commonwealth's Exhibit 1, Chapter 3, at 10:16:24. Tantlinger's subsequent actions of pulling over and checking his vehicle for damage and, ultimately, turning himself in at the police station are further evidence of Tantlinger's awareness that an accident had occurred. Accordingly, we conclude that the evidence was sufficient to sustain Tantlinger's conviction for accidents involving death or personal injury.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 03/14/2024