518 A.2d 1187

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Alvin MILLER, Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 6, 1985.

Decided Dec. 15, 1986.

John W. Packel, Chief/Appeals Div., Philadelphia, for appellant.

Robert B. Lawler, Chief/Appeals Div., Gaele McLaughlin Barthold, Chief/Prosecution Appeals, Steven J. Cooperstein, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.*

The issue that confronts us here is whether in a criminal case the Commonwealth, on the ground of protecting the anonymity and safety of a confidential informant, has the right to exclude defense counsel from an *in camera* inquiry into the veracity of search-warrant recitals alleging the past reliability of the informant.

On April 19, 1982, two men robbed Korman's Discount Store on Ridge Avenue in Philadelphia, and fled with several thousand dollars worth of jewelry from the establishment. During the robbery one of the men had brandished a shotgun. The next day, Detective John Knowles of the Philadelphia Police Department obtained a search and seizure warrant to conduct a nighttime search of premises occupied by one Alvin Miller ("Miller"), the appellant herein.

In obtaining the warrant, Detective Knowles stated in the affidavit that he had received from an unnamed informant a communication which implicated Miller in the robbery. The affiant also recited that past information from the same informer had led to four previous arrests and the recovery of stolen property. The full text of the affidavit for the warrant was as follows:

On Monday 4–19–82 Kormans Discount 2163 Ridge Ave was robbed by two negro males at approximately 4:10PM. This robbery was committed point [sic] of shot gun. When the two males were unable to gain entrance to the safe they broke the glass of a display case and removed

* This case was reassigned to the writer.

several thousand dollars worth of jewelry[.] These items are discribed [sic] above as items to be searched for. On Monday 4-19-82 the affiant recieved [sic] a telephone call at about 7:25PM from a person who has given the affiant information in the past. The affiant met the informant and after having him identify a photo of the above named male the informant directed the affiant to the actors [sic] residence. The informant went on to say that earlier that day (4-19-82) he had been told by a Rodney Brooks that he and another male were "going to get down." A short time after this the informant saw Rodney Brooks in the company of the above named actor and was asked if he wished to buy any jewelry. Both the actor and Rodney Brooks had a large quanity [sic] of jewelry on them. He further stated that he heard both Brooks and Miller tell another male that they had robbed the Korean store at 22nd and Ridge and that is where the jewelry came from. The affiant noted that the owners of Kormans Discount are Korean and that the actor fits the discription [sic] of one of the males. This discription [sic] was given by the Korean owner and a negro employee.

CREDITABILITY: [sic] The affinat [sic] notes the following to attest to the creditability [sic] of the informant: On Thursday 4-15-82 the informant gave the affiant information leading to the arrest of two males involved in a burglary and an auto theft. This information also led to the recovery of the stolen motor vehicle. The affiant then contacted Det [sic] Louis Green # 9179 who stated that he had received information from the same informant that had led to two arrests in the past 4 weeks and in one of the cases property was recovered.

On Monday 4-19-82 the affiant again spoke to the informant at 10:30PM and was advised that Alvin Miller had just been seen by him on the street and he was still wearing some of the jewelry.

Based on the affiants [sic] belief that the above statements are true and based on reliability of the informants [sic] past information the affiant rspectfuly [sic] requests

the issuence [sic] of this warrant to facilitate the recovery of the stolen goods.

The affiant further requests that a night time search be permitted due to the ease with which the stolen property can be moved or disposed of. All of the listed items except for the shotgun can be secreted on the body of one individual and removed from the property.

Upon execution of the warrant at Miller's residence the police found a sawed-off shotgun, and numerous articles of jewelry later identified as having been taken in the robbery. Miller was at home when the police arrived, and was placed under arrest upon their completion of the search. He was subsequently charged with Robbery, Theft, Receiving Stolen Property, Possession of an Instrument of Crime, Simple Assault, and other offenses arising from the robbery at Korman's Discount Store.

Prior to trial Miller's attorney filed a written motion to suppress the physical evidence seized at the defendant's home, asserting that the search warrant had been "issued unlawfully or executed unlawfully." At the ensuing hearing on the motion, defense counsel orally amplified the suppression grounds by further contending that the affidavit for the search warrant did not recite adequate indicia of the informant's reliability and thus did not set forth probable cause for the search.

In support of the suppression motion, defense counsel sought to challenge the veracity of Detective Knowles' recitals in the search-warrant affidavit relative to the reliability of the informant. Although counsel did not seek to learn the identity of the informant, he did attempt to elicit from Knowles, on cross-examination, the names of the persons anonymously referred to in the affidavit as having been previously arrested on the strength of "tips" from the informant. Detective Knowles refused to disclose the names of the prior arrestees, saying that to do so would, under the circumstances, also result in revelation of the informant's identity and thus endanger the latter's life.

In response to the Detective's refusal to make the disclosure sought, defense counsel proposed that the names of the prior arrestees be given *in camera,* and that he proceed with his inquiry there, beyond the presence of the accused. Defense counsel also stated that he would not tell his client of any of the *in camera* disclosures made by Knowles. The prosecution countered by arguing that, because the disclosure sought by the defense would compromise the safety of the informant, the *in camera* inquiry should be made by the court, to the exclusion not only of the defendant but also of *defense counsel.*

The hearing court agreed that the inquiry should be conducted *in camera;* but, before ruling on the prosecution's motion for the exclusion of defense counsel, the court instructed Detective Knowles to set forth the particulars of his fear for the informant's safety. Knowles then proceeded to give the following evidence: He testified that the informant, besides having directed the police to Miller for the robbery of the discount store, and besides having given information relative to the four prior arrestees anonymously referred to in the affidavit for the search warrant, had also given the police information which led to Miller's arrest for a separate, unrelated shooting incident. Knowles further stated that a "tip" from the same informant had led to the arrest of Miller's brother in yet another case. According to Detective Knowles the informant, on at least five occasions *after* the arrest of Miller for the robbery of Korman's, had given the police information leading to other arrests for various criminal offenses. Knowles next testified that all of the arrestees he had referred to lived within three square-blocks of the informant, and that the informant had daily contact with their families. Because of this latter circumstance, Detective Knowles opined that disclosing the names of too many of the arrestees would enable someone to conclude that the informant was some *particular* neighborhood person who was commonly known to the arrestees—and thereby deduce his identity.

The court expressly credited Knowles' assertion that if Miller or others from the defendant's neighborhood learned the names of the prior arrestees referred to in the affidavit, the informant's life would be severely imperiled. Nevertheless, the court concluded, as defense counsel had argued, that under *Commonwealth v. Hall,* 451 Pa. 201, 302 A.2d 342 (1973), the defense had the right to know the names of those prior arrestees for the purpose of testing the veracity of the probable cause recitals in the affidavit. Observing that defense counsel had made a commitment not to reveal any names he learned of *in camera,* the hearing court ruled that Detective Knowles had to make an *in camera* disclosure to defense counsel of the names in question.

The court further ruled that, should Knowles refuse to make the disclosure to or in the presence of defense counsel, all of the Detective's testimony relative to the issue of probable cause would be stricken from the record. In view of that ruling, the prosecution offered to provide defense counsel with the names of two of the four arrestees referred to in the affidavit. The defense rejected that offer, and insisted upon being given all four names. When Detective Knowles, in violation of the court's ruling, still refused to make the disclosure, the court ordered his testimony stricken—and granted the motion to suppress all evidence seized at Miller's residence pursuant to the search warrant. The Commonwealth took an immediate appeal to the Superior Court from the order of suppression.

The Superior Court, 334 Pa.Super. 374, 483 A.2d 498 (1984), reversed the suppression order and directed that the matter be remanded for a new hearing, holding that the hearing judge erred in instructing the prosecution to disclose to defense counsel the names of the prior arrestees. Although the Superior Court concluded that defendants have, as a general rule, the right to test by cross-examination the veracity of search warrant recitals of probable cause, the further conclusion was reached that such a right was, in the instant case, outweighed by the danger posed to the informant's safety. In this regard, the Superior Court

held that the *in camera* inquiry as to the identities of the prior arrestees should have been conducted by the hearing judge beyond the presence of the defendant and his counsel, but with the defense having the right to make an advance submission of questions to the judge. Under that procedure the veracity of the search warrant's recitals about the informant's history of reliability would be tested solely by the hearing judge, who would thereafter render to the defense a "general report" of his findings.

Such a procedure, in the view of the Superior Court, has the virtue of preserving the anonymity of the prosecution's informant and, at the same time, affording to the defendant a judicial inquiry into the veracity of the affiant's recitals about the informer's past reliability. After observing that the described procedure has been adopted in other jurisdictions,[1] the Superior Court negated the applicability of *Commonwealth v. Hall, supra,* by reading that case as not presenting circumstances dangerous to the life of the informant. The reversal of the suppression order led the defendant to petition this Court for an allowance of appeal. We granted review because of the importance of the issue to the administration of criminal justice.

In arguing that the Superior Court's order was erroneous, the appellant asserts the following: (1) that the *in camera* procedure mandated by the order, in excluding defense counsel, denies to the appellant pre-trial hearing rights conferred by the *Hall* decision; (2) that the order deprives him of the right to be represented by counsel, as well as of the rights of confrontation, cross-examination and due process guaranteed by the federal and state constitu-

1. *See United States v. Manley,* 632 F.2d 978 (2d Cir.1980), *cert. denied sub nom. Williams v. United States,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *United States v. Freund,* 525 F.2d 873 (5th Cir. 1976); *United States v. Moore,* 522 F.2d 1068 (9th Cir.1975); *United States v. Anderson,* 509 F.2d 724 (9th Cir.1975), *cert. denied* 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975); *United States v. Hurse,* 453 F.2d 128 (8th Cir.1971), *cert. denied,* 414 U.S. 908, 94 S.Ct. 245, 38 L.Ed.2d 146 (1973); *State v. Potter,* 25 Wash.App. 624, 611 P.2d 1282 (1980); *People v. Darden,* 34 N.Y.2d 177, 356 N.Y.S.2d 582, 313 N.E.2d 49 (1974).

tions; (3) that the procedure propounded by the Superior Court is unrealistic, in that a hearing judge cannot be expected to cross-examine a search-warrant affiant with the vigor of an advocate; and (4) that there was no reason to assume that defense counsel would dishonor his pledge not to reveal any names he learned of during the *in camera* inquiry.

At this juncture it will aid our inquiry to focus upon the issues that must impact upon the decision here to be reached. Both the constitution of this Commonwealth, Pa. Const. art. 1, § 8, and the constitution of this nation, U.S. Const. amend. IV, require that searches of the property and possessions of all citizens be limited to reasonable ones. *Commonwealth v. Chandler*, 505 Pa. 113, 477 A.2d 851 (1984); *Commonwealth v. Cockfield*, 431 Pa. 639, 246 A.2d 381 (1968); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause. *Commonwealth v. Chandler, supra.* It is designed to protect us from unwarranted and even vindictive incursions upon our privacy. It insulates us from dictatorial and tryannical rule by the state, and preserves the concept of democracy that assures the freedom of its citizens. This concept is second to none in its importance in delineating the dignity of the individual living in a free society.

However, there are those who would offend our laws and prey upon their fellow citizens for their own selfish interests. To maintain freedom for all we must maintain an ordered society, which requires that we effectively enforce our laws. Thus, the strictures that are to be applied to preserve our freedom must never be allowed inadvertently to provide the vehicle for undermining it. Of equal concern is that we guard against surrendering in fear, in a perceived lawless era, fundamental protections that are essential to

the preservation and maintenance of our free society. It must be with this delicate balance that we approach the resolution of this issue of first impression in this Commonwealth.

In assessing the issue at hand it must be initially recognized that we are discussing the credibility of the officer and not that of the undisclosed informant. The credibility of the informant must be determined on the basis of the representations made by the officer. The officer has attested to the accuracy of the information supplied by the informant to the officer on prior occasions. Thus the requested inquiry is to determine the truth of the representations made by the officer in the affidavit. On this record there is no question that if the officer's assertion as to the quality of the past information is accurate the informant would clearly meet the reliability test. What is at issue is the accuracy of the officer's representations as to prior demonstration of the informant's reliability.

In this context it must be noted that effective police work is often dependent upon information supplied by informants who are not in a position to have their identity disclosed. Criminal activity by its very nature is usually clandestine. Thus those who are somehow privy to that information are often the only source available for ferreting out the true facts. If the police are unable to guarantee the safety of those who are willing to cooperate, this valuable source of information will not be available.

In assessing appellant's claim that our decision in *Hall* mandates that the names of the prior arrestees should have been disclosed to defense counsel, we must examine the holding in that case and the analysis upon which it was based. The *Hall* Court concluded that the veracity of facts establishing probable cause recited in an affidavit supporting a warrant can be challenged and examined at a suppression hearing. *See also Commonwealth v. D'Angelo,* 437 Pa. 331, 263 A.2d 441 (1970). As a basis for this conclusion the Court in *Hall* noted:

... the right to challenge the truthfulness of recitals in a warrant follows from the command of *Aguilar-Spinelli* that the magistrate make a "detached and objective determination" of probable cause. [Citation omitted.] If a magistrate is furnished, and reviews falsified averments, he is effectively '[precluded from making] a detached and objective determination.' ... 'Modern thought ... would make incongruous any holding that a search warrant is *beyond attack even on proof that the allegations on which it was based were perjured.'* (Emphasis in original.)

*Id.*, 451 Pa. at 205–206, 302 A.2d at 344–345.

Proceeding from this premise, the *Hall* Court rejected the Commonwealth's contention that the request to challenge the veracity of the warrant in that case should be denied "because appellant did not specify *prior* to the hearing precisely which part of the warrant was inaccurate." *Id.*, 451 Pa. at 206, 302 A.2d at 345. There the Court properly ruled that the proffered restriction was "unduly restrictive" and would "virtually emasculate" the defense's right to establish that the facts supporting a warrant may be shown to be false or misleading. However, our decisions in *Hall* and *Commonwealth v. D'Angelo, supra,* must not be construed as either granting a license to the defense for a fishing expedition beyond the face of the affidavit, *see Commonwealth v. Hall, supra,* 451 Pa. at 210, 302 A.2d at 346 (Nix, J., concurring; joined by Jones, C.J., and Pomeroy, J.), or as preventing a permitted inquiry to be circumscribed by reasonable limitations. We, therefore, do not find persuasive appellant's argument that *Hall* mandates the disclosure to defense counsel of the names of the prior arrestees where to do so would jeopardize the safety of the informant.

The articulated federal mandate the *Hall* decision was designed to meet was the requirement that the issuing authority make a detached and objective determination of probable cause announced in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v.*

130

*United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). However, in both *Aguilar* and *Spinelli* the defect was found to be on the face of the affidavit. During the same year *Aguilar* was decided, the United States Supreme Court had occasion to observe:

> Petitioner attacks the validity of the search warrant. This Court has never passed directly on the extent to which a court may permit such examination when the search warrant is valid on its face and when the allegations of the underlying affidavit establish 'probable cause,....'

*Rugendorf v. United States,* 376 U.S. 528, 531–532, 84 S.Ct. 825, 827–828, 11 L.Ed.2d 887 (1964).

■ A more definitive exposition and elucidation of the considerations raised by the instant appeal is found in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In that matter the defendant, prior to his trial on charges of rape and related offenses, sought to suppress certain items of clothing and a knife that were found in his apartment, asserting a Fourth Amendment violation. The lower court denied the motion holding that a defendant could not, under any circumstances, challenge the veracity of a sworn statement used by police to procure a search warrant. The Delaware Supreme Court affirmed following the precedent in that state. The United States Supreme Court ruled that, if the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included by the affiant in the warrant, *and if* the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. What is particularly significant for our purposes is that the defendant was given the burden of establishing, at least *prima facie,* a material misrepresentation in the warrant's affidavit before inquiry would be constitutionally required by the Fourth Amendment. Thus without such a showing there is no Fourth Amendment mandate which would provide a defendant the

right to a hearing to attempt to establish that the affidavit contained a false statement, even in a material part, where the affidavit on its face is sufficient to support a finding of probable cause.

In reaching its conclusion in *Franks,* the Court made several observations pertinent to our present inquiry:

> If an informant's tip is the source of information, the affidavit must recite 'some of the underlying circumstances from which the informant concluded' that relevant evidence might be discovered and 'some of the underlying circumstances from which the officer concluded that the informant, *whose identity need not be disclosed,* ... was credible or his information reliable.' (citation omitted). Because it is the magistrate who must determine independently whether there is probable cause, (citations omitted), it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment.
>
> In saying this, however, one must give cognizance to competing values that lead us to impose limitations. (Emphasis added)

*Id.* at 165, 98 S.Ct. at 2681.

In articulating those "competing values" the Court noted, among other considerations, that the exclusionary rule "is not a personal constitutional right, but only a judicially created remedy extended where its benefit as a deterrent promises to outweigh the societal cost of its use; . . . ." *Id.* at 166, 98 S.Ct. at 2681. The Court also recognized the argument "that permitting a post-search evidentiary hearing on issues of veracity would confuse the pressing issue of guilt or innocence with the collateral question as to whether there had been official misconduct in the drafting of the affidavit." *Id.* at 167, 98 S.Ct. at 2682. The Court concluded with this assessment of the counter arguments:

> None of these considerations is trivial. Indeed, because of them, the rule announced today has a limited scope, both in regard to when exclusion of the seized evidence is

mandated, and when a hearing on allegations of misstatements must be accorded.

*Id.* at 167, 98 S.Ct. at 2682.

The Court further noted:

The requirement of a substantial preliminary showing should suffice to prevent the misuse of a veracity hearing for purposes of discovery or obstruction...., and we in no way predetermine, the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing of falsity has been made.

. . . .

There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Id.* at 170–171, 98 S.Ct. at 2683–2684.

From the foregoing it is apparent that appellant on this record did not meet the Fourth Amendment requirements which would have entitled him to even a hearing.[2] There was no "substantial preliminary showing of falsity" that

2. In *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) the Court held that the Due Process Clause of the Fourteenth Amendment did not require a state to expose an informant's identity routinely upon mere demand.

would have mandated a hearing on the issue of veracity, but rather appellant chose to utilize the *Hall* hearing as a vehicle for uncovering such evidence. While it is true that our decision in *Hall* did not require such a preliminary showing, it is equally as apparent that our *Hall* ruling was not compelled by the Fourth Amendment.[3]

■ However, our inquiry cannot end at this point. In *Hall* we established, as a matter of state law, that a defendant is entitled to make an inquiry into the veracity of statements included in an affidavit supporting the warrant without conditioning that right upon a "substantial preliminary showing" of the potential falsity of those facts.[4] However, as has been previously stated, *Hall* cannot be fairly read to suggest that this right is without limitation. For the reasons that follow we hold today that the *Hall* rule does not permit the disclosure of the identity of an informant relied upon by the affiant where it is established that the disclosure of such information would jeopardize the safety of the nongovernmental informant. This ruling also embraces the disclosure of information that would lead directly to the ascertainment of the identity of the informant.

■ In reaching this conclusion we recognize the importance of informants to an effective and efficient system of law enforcement and the societal cost if such a source was withdrawn. Additionally, the exclusionary rule is a judicially created device designed to deter improper governmental action in the course of criminal investigations and prosecu-

3. After the decision in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the rigidity of the "two-pronged" test established in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), was further undercut in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (decided December 11, 1985, as amended February 5, 1986).

4. In *Commonwealth v. Iannaccio*, 505 Pa. 414, 480 A.2d 966 (1984) three members of this Court suggested that *Hall* may have been based upon state constitutional law. *See id.*, 505 Pa. at 421, n. 2, 480 A.2d at 969, n. 2 (Opinion in Support of Affirmance).

tions. It is not a personal right of the accused. The affiant appears before the issuing authority, who has ample opportunity to satisfy himself as to the credibility of that individual. In this jurisdiction we grant the right of a supression hearing where the affiant is also present and available for extensive cross-examination testing his credibility. Again it must be emphasized that it is the police official, who requested the warrant, whose veracity is the subject of the inquiry. The justification for employing the exclusionary device in the first instance is to deter perjurious police statements. The reliability of the informant's information must be determined from the facts supplied by the police official. Once the affidavit is sufficient on its face the question of the veracity of the statements contained therein is directed to the truthfulness of the officer. It therefore cannot be convincingly argued that to withhold the identity of the informer would effectively impede defense counsel in testing the credibility of the police officer who is under oath and subject to cross-examination. Although appellant's counsel here argues that he did not seek the actual disclosure of the identity of the informant, it is clear that the information sought, i.e., the names of the persons anonymously referred to as having been previously arrested based upon information supplied, would reasonably lead to the disclosure of the informant's identity.

■ We are satisfied the possibility that today's limitation upon the *Hall* rules may permit a perjured police statement to remain undetected is far outweighed by the injury that would flow from rendering informants vulnerable to reprisals for their assistance.[5] Nor can we accept the accommodation suggested by the Superior Court. The concept of an *in-camera* hearing during which the defendant and his counsel are both excluded from an inquiry which may impact upon the ultimate finding of guilt or innocence is antithetical to the concept of due process as it has evolved in this Commonwealth under our Constitution. The defend-

5. We are also not unmindful of the deterrent effect of the existing penalties that are available upon a showing of perjury.

ant should not be forced to accept the judge as his advocate during that segment of the proceeding, nor is it proper to remove the judge from the role of an impartial arbiter. Our adjudicative process is an adversary one and the defendant is entitled to counsel at every critical stage. If this was a competent area of inquiry the defendant would have an absolute right to have counsel's participation in that inquiry. However, under our ruling today the area in question is not an appropriate subject of inquiry and such a proceeding is therefore not necessary.

■ We are therefore constrained to reject the Superior Court's suggestion of an ex parte hearing upon remand. The lower court was also in error in concluding that our decision in *Hall* required the witness to respond to the challenged questions. Thus, the order excluding the evidence secured as a result of the search must be vacated. Accordingly, the case is remanded for further proceedings in accordance with this opinion.

FLAHERTY, J., files a dissenting opinion in which PAPADAKOS, J., joins.

ZAPPALA, J., files a dissenting opinion.

FLAHERTY, Justice, dissenting.

Because I cannot condone the conduct of *ex parte* judicial proceedings, I wholeheartedly approve the majority's rejection of such an approach. However, because, in my view, a reasonable accommodation of the competing interests at stake is available without *completely* foreclosing cross-examination regarding the unnamed informant's reliability, I dissent.

A warrant to search premises occupied by appellant was issued on the basis of information supplied by an unnamed informant. That information, standing alone, could not supply probable cause; however, the informant's reliability was also asserted. It was alleged that, only five days earlier, the informant had supplied "information leading to the arrest of two males involved in a burglary and an auto

theft. This information also led to the recovery of the stolen motor vehicle." It was further alleged that the same informant had supplied information that "led to two arrests in the [preceding] four weeks and in one of the cases property was recovered." Probable cause to issue the warrant existed only if the allegations as to the informant's reliability were true.

The focus of the suppression hearing is to *test* whether the magistrate had probable cause to issue the warrant. It is true that the veracity of the affiant will be tested at the suppression hearing. However, the majority ignores the plain fact that, in order to accurately test whether the affiant is credible, the accuracy of his assertions regarding the informant's reliability must be ascertained. Thus, the veracity of facts recited in an affidavit supporting a warrant must be testable in a suppression hearing. Were the recitals untestable, the constitutional provisions protecting against searches without probable cause would be meaningless. As we noted in *Commonwealth v. Hall*, 451 Pa. 201, 207, 302 A.2d 342, 345 (1973):

> Here the pivotal issue at the suppression hearing was the reliability of the information attributed to the unnamed informer. If the informer was reliable, the search warrant was issued with probable cause. If the informant was proven to be without reliability, the warrant was improperly issued.

(Footnote omitted).

The problem in this case is to balance the Commonwealth's privilege to preserve an informant's anonymity against the defendant's right of confrontation. Cross-examination of the police officer-affiant regarding the informant's reliability was rebuffed on grounds disclosure of the names of *all* the cases where the informant had supplied information would enable unscrupulous persons to identify the informant to his detriment.

In view of the perceived threat to the informant inherent in disclosure of his identity, the Commonwealth offered to supply the names of some but less than all of the cases

where the informant had supplied reliable information. Given the necessity for informants in law enforcement and the good faith assertion that the informant's safety was in jeopardy if his identity was revealed, I would hold that disclosure of some, but not all, of the cases enumerated in the affidavit would be sufficient to test the reliability of the informant on this record, at least. This position allows reasonable cross-examination to test the police officer-affiant's credibility and the informant's reliability without jeopardizing the informant. I am satisfied that this solution provides more satisfactory protection for the competing interests involved in this case than complete foreclosure of cross-examination.

PAPADAKOS, J., joins this dissenting opinion.

ZAPPALA, Justice, dissenting.

I join in the Dissenting Opinion of Mr. Justice Flaherty. I disagree only to the extent that the "reasonable accommodation" relied upon by Mr. Justice Flaherty can be interpreted as permitting the Commonwealth to negotiate the disclosure of less than all of those convictions which bear on the determination of the reliability of the confidential informant. On the peculiar facts before us, the informant's reliability should be assessed only by reference to the two convictions attributable to information the informant supplied to the affiant. The other two convictions were not within the personal knowledge of the affiant, but were simply hearsay about the claims of a fellow police officer, included to bolster the affiant's assertion that the informant was reliable. I would find the statements about the informant's help in securing these convictions to be extraneous information without any weight in the probable cause determination. It follows that if these third-hand assertion's of the informant's reliability can neither enhance nor detract from the probable cause determination, the Commonwealth's failure to disclose further information about them is of no moment. It would be futile for a defendant to

challenge information which should have had no bearing on the determination.

As to the two convictions which the affiant himself knew had been obtained with the assistance of the informant, cross-examination of the affiant and disclosure of the names of those convicted was required. The controlling precept is that a finding of probable cause can be based on second-hand information presented to a magistrate by an affiant *if* an adequate basis is also presented to establish that the unnamed supplier of the information is worthy of belief. An assertion that this same person has proven reliable on previous occasions can suffice, but unless the specifics of those occasions are subject to investigation and challenge the affiant's own assessment that his informant is reliable stands as the only evidence on this point. As Mr. Justice Flaherty and our previous cases make clear, it is unacceptable that allegations made to support a determination of probable cause, which is in the first instance *ex parte,* should forever be placed beyond the realm of testing.