IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

COMMONWEALTH OF PENNSYLVANIA, : No. 32 MAP 2016
:
    Appellant : Appeal from the Order of the Superior
: Court dated 10/28/15 at No. 2074 MDA
    v. : 2014 affirming the order of the York
: County Court of Common Pleas,
: Criminal Division, dated 11/6/14 at No.
LORNE BRETT HOPKINS, JR., : CP-67-CR-0004536-2014
:
    Appellee :
: SUBMITTED: September 7, 2016

## OPINION IN SUPPORT OF REVERSAL

**CHIEF JUSTICE SAYLOR**           **DECIDED: June 30, 2017**

I respectfully differ with any extension of *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), to the present circumstances, since I do not believe that a good-faith "exception" to the exclusionary rule is implicated in this matter. Rather, the salient issue, in my view, is whether the search warrant was valid and, thus, whether the exclusionary rule applies in the first instance. As I would find that the warrant was supported by probable cause as constitutionally required – and was therefore valid – I would conclude that the evidence should not have been suppressed.

Initially, the warrant in *Edmunds* was invalid because it was facially inadequate to satisfy the probable-cause standard. *See Edmunds*, 526 Pa. at 382, 586 A.2d at 890-91 ("[W]e concur with the inevitable conclusion of the trial court and the Superior Court, that probable cause did not exist on the face of the warrant."). *See generally* PA. CONST. art. I, §8 (mandating that all warrants be based on probable cause). Therefore,

the *Edmunds* Court's concern was with the invasion of privacy that would ensue if the fruits of *illegal* searches could be used against an accused. *See Edmunds*, 526 Pa. at 402, 586 A.2d at 901 (indicating that "the use of the fruits of illegal searches would only serve to undermine the integrity of the judiciary in this Commonwealth").

The decision in *Commonwealth v. Johnson*, 624 Pa. 325, 86 A.3d 182 (2014), was to the same effect. It, too, rejected a good-faith exception to the exclusionary rule in the context of a search undertaken pursuant to an expired – and thus invalid – arrest warrant. The search in *Johnson*, like that in *Edmunds*, was illegal and, consequently, the exclusionary rule applied. Thus, in *Johnson* a good-faith exception was rejected on essentially the same basis that it was rejected in *Edmunds*: Article I, Section 8 is intended to protect privacy and, hence, it prevents the fruits of an illegal search from being used against a defendant regardless of whether the investigating officer reasonably believed he or she was acting properly.

Importantly, *Edmunds* did not purport to overlay upon Article I, Section 8 an even stricter regime than that which can reasonably be derived from the provision's text – such that evidence obtained through execution of a valid warrant supported by probable cause must be suppressed if it is later discovered that a *private actor* misled the police. A rule of this nature is untethered to the Constitution, which simply requires that searches and seizures be reasonable and that warrants only be issued upon a showing of probable cause. *See* PA. CONST. art. I, §8. Further, such a rule does little to "insulate[ us] from dictatorial and tyrannical rule by the state," Opinion in Support of Affirmance ("OISA"), *slip op.* at 10 (quoting *Edmunds*, 526 Pa. at 398, 586 A.2d at 899, in turn quoting *Commonwealth v. Miller*, 513 Pa. 118, 127, 518 A.2d 1187, 1191-92 (1986)), since no agent of the government, in such circumstances, has acted improperly.

In light of the above, the nature of the question here is materially distinct from those which were raised in *Edmunds* and *Johnson*:  it asks whether a search warrant can be retroactively invalidated – and thus, the search undertaken pursuant to it be deemed illegal – where probable cause appears evident based on the four corners of the officer's affidavit, but the facts on which the officer relied are discovered, in the post-search timeframe, to be false.  Since "[t]he linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause," *Edmunds*, 526 Pa. at 398, 586 A.2d at 899, the question, as applied here, is whether the warrant was, in fact, supported by probable cause (and thus valid) notwithstanding that:  (a) Shifflet lied to the affiant, Detective Fetrow, and (b) the information from Shifflet which the detective included in his probable-cause affidavit is necessary to a determination that probable cause existed.  The answer to this question depends on whether, and under what circumstances, probable cause can be present when it is grounded on material from a third-party source that later turns out to be false.

There is no requirement that probable cause be based on facts which are true, only on facts which an officer reasonably believes to be true.  *See Commonwealth v. Jones*, 605 Pa. 188, 199, 988 A.2d 649, 655 (2010) ("Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." (quoting *Commonwealth v. Thomas*, 448 Pa. 42, 52, 292 A.2d 352, 357 (1972))).  In *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978), the Supreme Court noted that, although probable cause should be based on truthful information,

> [t]his does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as

upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Id.* at 165, 98 S. Ct. at 2681; *see also United States v. Carmichael*, 489 F.2d 983, 989 (7th Cir. 1973) ("If an agent reasonably believes facts which on their face indicate that a crime has probably been committed, then even if mistaken, he has probable cause[.]"). Thus, the Supreme Court explained, to invalidate a warrant, the defendant must demonstrate that the affiant included a false statement either knowingly and intentionally, or with reckless disregard for its truth. *See Franks*, 438 U.S. at 155-56, 170, 98 S. Ct. at 2676, 2683.

Notably, this requirement only applies to the affiant, and not the nongovernmental source of the information. *See id.* at 171, 98 S. Ct. at 2684. Thus, the probable-cause assessment is not undermined where an officer reasonably believes the information obtained from an informant who later turns out to have been lying. In this respect, the Connecticut Supreme Court has explained that

[p]robable cause is determined by objectively considering what is known to the state at the time a warrant is presented to a magistrate; it does not require the accuracy presented by hindsight. Inherent in the concept of probable cause is that the factual basis of a warrant may be inaccurate.

*State v. Glenn*, 740 A.2d 856, 862 (Conn. 1999). The court suggested that to hold law enforcement to a more exacting standard than reasonable belief in the truth of the third-party's information could "result in a Catch-22 situation" where the police "would be required to conduct virtually a complete investigation and present the magistrate with a confirmed, absolutely true affidavit before a valid warrant could be issued, but such a complete investigation would be nearly impossible without a warrant." *Id.*

Regardless of whether a "Catch-22" would result, the probable cause standard does not encompass such high bar. As one commentator has expressed:

> Even if [misinformation provided by the informant] is material, exclusion of competent evidence seems inappropriate. It is true that the warrant will have been issued on inaccurate data, but the fourth amendment has been read not to proscribe "inaccurate" searches, but rather only "unreasonable" ones. And a warrant based on information which the affiant and the magistrate both had reasonable grounds for believing is a reasonable one. To require agents to "know" facts that they cannot reasonably be expected to know would not deter any searches, since the agents must work with the reasonably believable evidence before them. Such a rule would also allow at least some defendants to escape otherwise certain conviction merely because the police cannot operate with perfect knowledge in every case.

Steven M. Kipperman, *Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence*, 84 HARV. L. REV. 825, 832-33 (1971) (footnotes omitted). Although the above remarks reference the Fourth Amendment and its deterrence objective, the observation that only unreasonable searches – and not "inaccurate" ones – are precluded under that constitutional provision applies equally to Article I, Section 8. *Cf. Commonwealth v. Miller*, 497 Pa. 257, 260, 439 A.2d 1167, 1169 (1982) ("We have noted the requirement of probable cause is not structured to assure certainty but rather it is a test of probabilities dealing with the considerations of everyday life."). Accordingly, a finding of probable cause is predicated on what the affiant reasonably believes to be true. It is not assessed on the actual truth of the statements so that a later recantation by one of the affiant's sources has the ability retroactively to vitiate probable cause that once existed. *See generally Commonwealth v. Lyons*, 622 Pa. 91, 110, 79 A.3d 1053, 1064 (2013) (indicating that probable cause "exists where, based upon a totality of the circumstances set forth in the affidavit of probable cause, including the reliability and veracity of hearsay statements included therein, there is a fair probability that evidence of a crime will be found in a particular place" (internal quotation marks, ellipsis, and citation omitted)).

The OISA discounts the above and, particularly, any reliance on *Franks*, because *Franks* was based on the Fourth Amendment and this Court departed from its holding in *Commonwealth v. Miller*, 513 Pa. 118, 518 A.2d 1187 (1986). *See* OISA, *slip op.* at 17 n.10. The point on which *Miller* declined to follow *Franks*, however, did not relate to whether probable cause can be based on false information which is reasonably believed by an officer. It pertained to the potential for an officer's misrepresentation of facts and the concept that only a defendant who makes a preliminary showing of the officer's intentional deception (or reckless disregard for the truth) has a right to a hearing on the question. *See Miller*, 513 Pa. at 130, 518 A.2d at 1193 ("What is particularly significant for our purposes is that the defendant [in *Franks*] was given the burden of establishing, at least *prima facie*, a material misrepresentation in the warrant's affidavit before inquiry would be constitutionally required by the Fourth Amendment."). *Miller* explained that, as a matter of state law, defendants in Pennsylvania courts are entitled to such a hearing without supplying a preliminary showing. *See id.* at 133, 518 A.2d at 1194-95 (citing *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973)).

Moreover, *Miller* was aligned with *Franks* on the question involved in this appeal, as it clarified that such a hearing does not inquire into the veracity of the third-party informant, only that of the police-officer affiant. *See id.* at 134, 518 A.2d at 1195 (emphasizing "it is the police official, who requested the warrant, whose veracity is the subject of the inquiry"); *see also id.* ("Once the affidavit is sufficient on its face the question of the veracity of the statements contained therein is directed to the truthfulness of the officer."). Thus, again, only if the officer made a "material misrepresentation" to the magistrate should the warrant be set aside. *Id.* at 130, 518 A.2d at 1193; *see also Hall*, 451 Pa. at 205, 302 A.2d at 344 (explaining the basis for this particularized focus by noting that a magistrate cannot make an objective and

detached probable-cause determination if given "falsified averments"). Hence, the OISA departs from the Fourth Amendment as to the *constitutional meaning of probable cause* – a departure that is in tension with this Court's past pronouncements, *see, e.g.*, *Commonwealth v. Glass*, 562 Pa. 187, 197, 754 A.2d 655, 661 (2000) ("The standard for evaluating whether probable cause exists for the issuance of a search warrant is the same under both the Fourth Amendment and Article I, §8[.]"), and which is undertaken without a supporting *Edmunds* analysis.

In my view, and as noted, although Article I, Section 8's purpose of protecting privacy has led this Court to eschew good-faith exceptions to the exclusionary rule where probable cause is absent, it does not follow that the definition of probable cause must be narrowed to require that the material averments in the officer's affidavit be, not only reasonably believed by the officer, but factually true.

Turning to the present case, at the suppression hearing Detective Fetrow testified that he believed Shifflet's information to be true, *see* N.T., Nov. 6, 2014, at 6, and Appellee did not dispute this. The Commonwealth also explained why such belief was reasonable: Shifflet implicated himself in the offense and, as such, he was not solely reporting that someone else had committed a crime; Shifflet referred to Appellee by a nickname and knew the area where he lived; and Shifflet selected Appellee from a photo array. *See id.* at 17-18. *See generally Miller*, 497 Pa. at 260, 439 A.2d at 1169 (suggesting an enhanced reliability relative to a probable-cause determination when the declarant was involved in the events being recounted, because "[t]he personal involvement of the declarant assures direct knowledge of the source of the information"); *Commonwealth v. Stickle*, 484 Pa. 89, 97-98, 398 A.2d 957, 961-62 (1979) (same).

Finally, and perhaps most important, Appellee affirmatively conceded that the information provided by Shifflet reasonably appeared true to both Detective Fetrow and the magistrate, and that the detective did not misrepresent any of the information when applying for the search warrant. Hence, Appellee clarified that his sole argument was that the Superior Court's decisions in *Commonwealth v. Clark*, 412 Pa. Super. 92, 602 A.2d 1323 (1992), and *Commonwealth v. Antoszyk*, 985 A.2d 975 (Pa. Super. 2009), *aff'd by an equally divided court*, 614 Pa. 539, 38 A.3d 816 (2012), required suppression on the basis that the information was, in fact, false. *See* N.T., Nov. 6, 2014, at 19-22.

For its part, the suppression court found as a fact that Detective Fetrow proceeded on a good faith belief that Shifflet's information was trustworthy and that such information constituted probable cause so as to support a valid warrant. *See id.* at 29-30.[1] Thus, the only reason the suppression court granted Appellee's motion was that it was bound by prevailing Pennsylvania law as set forth in *Clark* and *Antoszyk*. *See id.* at 31-32.[2]

---

[1] This comports with the standard for reckless disregard in the speech arena, which arises when the person entertains serious doubts about the truth of the information or acts with a high degree of awareness of its probable falsity. *See Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 76 n.6, 923 A.2d 389, 395 n.6 (2007) (quoting *Masson v. New Yorker Magazine*, 501 U.S. 496, 510, 111 S. Ct. 2419, 2429, (1991), and *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S. Ct. 209, 216 (1964)). Although that test was fashioned for defamation controversies, it is applicable as concerns affidavits of probable cause because neither the Supreme Court nor this Court has developed a separate definition. *Accord Wilson v. Russo*, 212 F.3d 781, 787-88 (3d Cir. 2000).

[2] As suggested above, the judicial finding of a good faith belief in the truthfulness of Shifflet's information is materially different from a good faith belief in the validity of a warrant that, in reality, is not supported by probable cause. In the former situation, it contributes to the actual validity of the warrant and, as such, does not implicate a good-faith exception to any rule. In the latter, it invokes a possible good-faith exception to the general rule that search warrants must be based on probable cause – an exception which exists under the Fourth Amendment but not Article I, Section 8.

As I believe, for the reasons given, that those cases were wrongly decided, I would reverse the order of the court of common pleas.

Justices Todd and Mundy join this opinion in support of reversal.