J-S21017-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                            :            PENNSYLVANIA
                            :
             v.                  :
                            :
                            :
LAURA COLE                 :
                            :
           Appellant       :    No. 997 WDA 2017

Appeal from the Judgment of Sentence June 5, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000726-2017

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:              FILED MAY 01, 2018

Laura Cole (Appellant) appeals from the judgment of sentence imposed after the trial court convicted her of possession of a controlled substance and possession with the intent to deliver a controlled substance (PWID).[1] For the reasons that follow, we affirm Appellant's convictions, vacate her sentence for possession of a controlled substance, but do not remand for resentencing because our disposition does not disrupt the trial court's sentencing scheme.

Following an investigation into a shooting allegedly involving Christopher Cunningham (Cunningham), Appellant's paramour, the West Mifflin Police Department obtained a warrant to search Appellant's residence. In short, the facts set forth in the affidavit of probable cause giving rise to the belief that evidence of Cunningham's crimes would be found in Appellant's

_____

[1] 35 P.S. § 780-113(a)(16), (30).

apartment were as follows: (1) witnesses observed the perpetrators of the shooting drive to and from the scene in a gold sedan; (2) video surveillance showed a light-colored sedan fleeing the scene of the shooting at a high rate of speed; (3) police discovered that the same car observed at the scene of the shooting and on the surveillance video was registered to Cunningham; (4) the police also learned that Cunningham was romantically involved with Appellant, who is the mother of his child; and (5) the police observed Cunningham's vehicle at Appellant's apartment numerous times (day and night) in the days following the shooting.

The trial court summarized the remaining relevant factual and procedural history of this case as follows:

> On or about October 21, 2016, police, pursuant to a search warrant, entered and searched the residence of [Appellant] located at 703 D Drive in West Mifflin, Pennsylvania. As a result of said entry and search, the police found cocaine, marijuana, two digital scales, a marijuana grinder, [and] an elephant shaped pipe for smoking marijuana. [Appellant] was charged with [PWID], Possession of a Controlled Substance and Endangering the Welfare of Children (EWOC).
>
> On or about April 18, 2017, [Appellant] filed a Motion to Suppress alleging probable cause did not exist for the issuance of the search warrant in this matter. A Suppression Hearing was held on or about June 5, 2017, and denied by this Court. The matter then proceeded to a stipulated non-jury trial at the conclusion of which [Appellant] was found guilty of the PWID and Possession charges and not guilty on the EWOC charge. [Appellant] was sentenced to 12 months' probation on the PWID charge, and a concurrent period of 12 months' probation on the Possession charge. No Post-Trial Motions were filed.
>
> On July 5, 2017, [Appellant] filed a Notice of Appeal. On July 10, 2017[,] this [c]ourt ordered [Appellant] to file a Concise

- 2 -

Statement of Matters Complained of on Appeal, and on July 31, 2017, [Appellant] filed [the] same.

Trial Court Opinion, 8/7/17, at 1-2.

On appeal, Appellant presents the following issues for review:

I.     Whether the trial court erred in not granting [Appellant]'s motion to suppress when the information contained in the four corners of the search warrant affidavit failed to establish probable cause to search [her] residence, in violation of her rights under the Fourth and Fourteenth Amendments of the United States Constitution, and Article 1, § 8 of the Pennsylvania Constitution?

II.     Whether [Appellant]'s double jeopardy rights were violated and her sentence for Possession is illegal when [she] was convicted of PWID and Possession with respect to a large amount of cocaine that was found inside her residence, the trial court imposed a sentence of 12 months' probation for each offense, but Possession is a lesser-included offense of PWID such that the former merges with the latter for sentencing purposes?

Appellant's Brief at 6.

For her first issue, Appellant argues that the trial court erred in denying her suppression motion. Appellant asserts that the four corners of the search warrant affidavit did not establish probable cause to search her home. Appellant contends that several facts asserted by the police in the affidavit were unsupported assumptions and consequently, failed to establish probable cause that evidence of Cunningham's crimes would be found in Appellant's apartment.

The standard of review for suppression claims is as follows:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are

- 3 -

correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Commonwealth v. Freeman, 150 A.3d 32, 34-35 (Pa. Super. 2016) (quotations and citation omitted).

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution "each require that search warrants be supported by probable cause." Commonwealth v. Jones, 988 A.2d 649, 655 (Pa. 2010).

"The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause." Commonwealth v. Edmunds, [] 586 A.2d 887, 899 ([Pa.] 1991) (quoting Commonwealth v. Miller, 513 Pa. 118, 518 A.2d 1187, 1191 (1986)). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." Commonwealth v. Thomas, [] 292 A.2d 352, 357 ([Pa.] 1972).

In Illinois v. Gates, 462 U.S. 213 [] (1983), the United States Supreme Court established the "totality of the circumstances" test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. In Commonwealth v. Gray, [] 503 A.2d 921 ([Pa.] 1986), this Court adopted the totality of the circumstances test for purposes of making and reviewing probable cause determinations under Article I, Section 8. In describing this test, we stated:

Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in Gates, the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place . . . . It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magist[erial district judge] had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

*     *     *

[Further,] a reviewing court [is] not to conduct a de novo review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

Id. (quoting Commonwealth v. Torres, 764 A.2d 532, 537-38, 540 (Pa. 2001)).

The affidavit of probable cause in the application for the search warrant in this matter states, in pertinent part:

During the course of this investigation, the affiant located and identified several victims and witnesses whose true identities have been ascertained and have been memorialized in reports maintained by the affiant. The true identities of these known unnamed eye witnesses are being withheld for the purpose of this affidavit, both to ensure their safety and to preserve the integrity of the ongoing investigation.

On October 14, 2016 at 01:04 hours[,] West Mifflin Officers, Booth, Marone, and Scruggs were dispatched to 603 Glencairn Street West Mifflin for shots fired into the residence. There were

- 5 -

six victims in the house at the time, Victim #1 DOB 06/24/1949 was down stairs, Victim #2 DOB 1 1/25/1971 was in the living room on the couch, Victim #3 DOB 01/05/1973 and Victim #4 DOB 06/30/2016 were in bed in the one bedroom, and Victim #5 DOB 05/16/2001 and Victim #6 DOB 06/07/1998 were in the second bedroom. Detective Basic responded to the residence to process and photograph the scene. Several victims and witnesses provided statement[s] of the occurrence. The actor(s) were not located at the time.

\* \* \*

On October 15, 2016, Witness #1 was interviewed by Detectives Basic and Priestley. Witness #1 heard several shots and when she/he looked outside he saw two to three people run to a car that was parked on Donna Avenue. The vehicle sped at a high rate towards the fire hall. The witness said he heard over 12 rapid fired shots.

\* \* \*

Detective Priestley and I then pr[o]ce[e]ded to Witness #3's residence. During the conversation, Witness #3 provided information that Victim #6 (robbed) [Cunningham]. He stated that he is familiar with both the victim and Cunningham and a drug deal for molly was set up. He said that Vi[c]tim #6 met with Cunningham at his address and Cunningham gave the victim $1000.00 to purchase molly. The victim left with the money and did not return as promised with the drugs. Cunningham became angry and they went searching for Victim #6 to the location where he pick[ed] up (Molly) with the victim on other occasions. After several hours went pas[t] and they were unable to make contact with the victim[,] they returned to West Mifflin. On the way back Witness #3 said that Cunningham made a phone call and heard him tell someone that he was ripped off and said to meet with him. Cunningham told Witness #3 to get in the back seat and they picked up two black males on Greensprings Avenue. Witness #3 saw the one black male with a long rifle in his possession and believed the second black male had handguns in his pocket. He said both black males were wearing all black clothing. Witness #3 stated Cunningham's vehicle is a gold sedan. He said that Cunningham parked down the street on Donna Avenue. He and Cunningham stayed in the vehicle and the two black males walked up to the front door and knocked. Witness #3 said that a few

seconds later he heard and saw flashes from the guns and saw the black males shooting at the house. The black males returned to the vehicle and they drove off. He said they drove down Donna Avenue and Cunningham dropped him off at his girlfriend's on Castle Drive. He did not want to discuss the matter any longer.

I obtained surveillance video from Homeville Fire [C]ompany depicting at 0059 hours a light color sedan with a sun roof traveling south on Greensprings Avenue make a left onto Majka Street and at 0109 hours the same vehicle is seen coming down Donna Avenue and then making a right onto Greensprings at a high rate of speed, failing to stop at the stop sign.

On October 15, 2016, Detectives Basic and Priestley located the vehicle outside Cunningham's girlfriends at the 700 building in Mifflin Estates. The vehicle is registered to Cunningham.

On October 17, 2016, Detective Priestley and I interviewed Victim #6. He admitted that he was involved in a drug deal with Witness #3 and Cunningham.

\*　　\*　　\*

Detective Priestley and I interviewed Witness #3 again at the station. He reiterated the drug deal between Cunningham and Victim #6. He was shown a photograph of the vehicle and confirmed this to be Cunningham's vehicle.

\*　　\*　　\*

Detective Priestley obtained Cunningham's phone number from Witness #3['s] phone that was in his contact number for that day. Cunningham's number is consistent with the phone number that West Mifflin Police have listed for him in our system.

Witness #3 willingly gave a recorded statement of the shooting incident.

During the course of this investigation a background check of [Cunningham] was performed using various databases and documents. It was learned that Cunningham's paramour and the mother of his child, [Appellant], resides at 703 D Drive, West Mifflin, within the Mifflin Estates Housing Complex. Since this incident occurred, Cunningham's vehicle was originally located in

the parking lot directly outside of [Appellant]'s apartment and has been observed parked there num[er]ous times since, at various times of the day and night. As such, it is believed Cunningham is residing within the apartment of [Appellant].

Based on the above information, I, Detective Sgt Topolnak respectfully request a[] search warrant be issued for apartment 703 Mifflin Estates, West Mifflin.

Affidavit of Probable Cause, 10/21/16, at 1-3.

In arguing that the trial court erred in denying her suppression motion, Appellant first asserts that the affidavit of probable cause fails to adequately explain how the police determined that the gold sedan witnessed at the scene of the shooting belonged to Cunningham. Specifically, Appellant emphasizes that the affidavit does not include the vehicle's make, model, license plate number, or registration, and that the only information indicating that the gold sedan belonged Cunningham was from an "unnamed source." Appellant's Brief at 22, 32. Appellant contends that the information in the affidavit linking Cunningham to the gold sedan is tenuous at best and as a result, constitutionally infirm.

Initially, we note that Appellant accuses the police of obtaining information relating to Cunningham's vehicle from an unnamed source. The police, however, obtained information regarding the vehicle, not from an unnamed or anonymous source but from Witness #3, whose identity is known to the police, but not included in the affidavit of probable cause for safety and investigatory reasons.

The affidavit of probable cause indicates that Witness #3 told the police that during the shooting, he was present with Cunningham in Cunningham's gold sedan, which was the vehicle that carried the perpetrators to and from the shooting. Affidavit of Probable Cause, 10/21/16, at 2. After learning from Witness #1 that the vehicle carrying the shooters fled the scene at a high rate of speed in the direction of the local fire hall, the police obtained surveillance footage from the fire hall showing a "light[-]color[ed] sedan" traveling "at a high rate of speed, failing to stop at [a] stop sign" heading away from the location of the shooting. Id. at 1-2. When the police showed Witness #3 a photograph of this vehicle, he confirmed that it was Cunningham's vehicle. The affidavit further reflects that Detectives Basic and Priestly located this same vehicle outside of Appellant's residence. Id. at 2.

It is reasonable to presume that at this point, the detectives ran the vehicle's information through their computer and discovered that it was registered to Cunningham. See Jones, 988 A.2d at 655. Moreover, Appellant cites no authority for the proposition that the police were required to set forth in the affidavit of probable cause the precise investigatory technique or database used to learn the ownership of Cunningham's vehicle. Accordingly, a common sense reading of the affidavit plainly sets forth a sufficient factual basis for concluding that the vehicle in question was registered to Cunningham.

Appellant next argues that although the affidavit of probable cause stated that Appellant and Cunningham were paramours, the affidavit merely explains that police discovered this information based on a "background check" of Cunningham "using various databases and documents." Appellant's Brief at 34. Appellant contends that it was constitutionally improper for the affidavit to fail to set forth "the actual sources used by the police to make this important determination" and the police never independently corroborated this information by observing the two individuals together. Id. Appellant asserts that the "information regarding Cunningham's association with [Appellant] was based on rank hearsay." Id.

> This Court has explained:
>
> Hearsay information is sufficient to form the basis of a warrant so long as the magist[erial district judge] has been provided with sufficient information to make a "neutral" and "detached" decision about whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magist[erial district judge] had a "substantial basis for concluding that probable cause existed."

Commonwealth v. Woosnam, 819 A.2d 1198, 1208 (Pa. Super. 2003).

As with the registration of the gold sedan, Appellant cites no authority mandating that the affidavit of probable cause in this case had to set forth the exact database and documents through which the police discovered the romantic connection between Cunningham and Appellant. Moreover, it was reasonable for the magisterial district judge to presume that as the police investigated Cunningham, his whereabouts, and his connection to the

shooting that they not only conducted a background check, but through their investigation, learned that Cunningham and Appellant were romantically linked, particularly given that Appellant is the mother of his child. Affidavit of Probable Cause, 10/21/16, at 1-3. Accordingly, we conclude that the affidavit set forth a substantial basis supporting the conclusion that Appellant and Cunningham were paramours. See Woosnam, 819 A.2d at 1208.

Appellant further argues that the affidavit indicates that the police only observed the gold sedan parked outside of Appellant's residence on one occasion and that there is no indication that police ever observed Cunningham at Appellant's apartment. Although the affidavit states that the gold sedan was observed at Appellant's apartment complex "at various times of the day and night," Appellant takes issue with the affidavit's failure to provide the source of this information.

The affidavit of probable cause reveals that the day after the shooting, Detective Basic and Priestly observed the gold sedan outside of Appellant's apartment. Affidavit of Probable Cause, 10/21/16, at 2. The affidavit further states "[s]ince this incident occurred, Cunningham's vehicle was originally located in the parking lot directly outside of [Appellant]'s apartment and has been observed parked there num[er]ous times since, at various times of the day and night." Once again, given a common sense, non-technical reading of the affidavit, even though the affidavit does not set forth the source of this information, it is reasonable to assume that through their continued

investigation into the shooting in question, either Detectives Basic and Priestly, or other police officers involved in the investigation, continued to observe Cunningham's car parked outside of Appellant's apartment. See Jones, 988 A.2d at 655.

Rather than have us review the totality of the circumstances, Appellant seeks a piecemeal review of certain factual conclusions drawn by the police in the affidavit of probable cause. It is well-settled, however, that we must consider the totality of the circumstances and that "[w]e do not review the evidence piecemeal." Commonwealth v. Nobalez, 805 A.2d 598, 600 (Pa. Super. 2002). Thus, we conclude that the trial court did not err in determining that, based on the totality of the circumstances, the four corners of the affidavit established probable cause to believe that evidence of Cunningham's crimes would be found in Appellant's home. Accordingly, the trial court properly denied Appellant's suppression motion.

In her second issue, Appellant argues that we should vacate her sentence for possession of a controlled substance because it merged with her conviction of PWID. "A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. Accordingly, our standard of review is plenary." Commonwealth v. Williams, 958 A.2d 522, 527 (Pa. Super. 2008) (quotations and citation omitted). "Challenges to the legality of the sentence are not waivable." Commonwealth v. Jacobs, 900 A.2d 368, 372 (Pa. Super. 2006).

It is well-settled:

> The proof necessary to convict a defendant of possession with intent to deliver includes proving all of the elements of possession. Thus, possession is a lesser included offense of possession with intent to deliver and the former merges with the latter for sentencing purposes.

Commonwealth v. Williams, 958 A.2d 522, 528 (Pa. Super. 2008). Additionally, both the trial court and the Commonwealth agree that Appellant's convictions of possession of a controlled substance and PWID should have merged for sentencing purposes.[2]  See Trial Court Opinion, 8/7/17, at 6; Commonwealth's Brief at 20.  Accordingly, we vacate Appellant's sentence for possession of a controlled substance.  Because Appellant's sentence for possession of a controlled substance was identical to and ordered to run concurrently with her sentence for PWID, we need not remand for resentencing, as our correction of the illegal sentence does not disrupt the court's sentencing scheme.  See Commonwealth v. Johnson, 100 A.3d 207, 216 n.8 (Pa. Super. 2014) (declining to remand for resentencing where vacating a sentence did not affect the trial court's overall sentencing scheme).

Judgment of sentence affirmed in part and vacated in part.  Jurisdiction relinquished.

---

[2]  The trial court noted that it would have vacated Appellant's illegal sentence had Appellant brought the error to its attention either at sentencing or in a post-sentence motion.  Trial Court Opinion, 8/7/17, at 6.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2018